UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Sig Sauer, Inc.

      v.

Jeffrey S. Bagnell, Esq., LLC &
Jeffrey S. Bagnell

Civil No. 22-cv-078-LM
Opinion No. 2022 DNH 083 P

# **O R D E R**

Plaintiff Sig Sauer brought this action against Defendants Jeffrey S. Bagnell and his law firm, Jeffrey S. Bagnell, Esq., LLC.[1] Sig Sauer brings claims against them for defamation, violating § 43(a) of the Lanham Act, and violating the New Hampshire Consumer Protection Act, RSA 358-A.

Sig Sauer's claims relate to a computer-generated animation that Bagnell uploaded to the law firm's website and to YouTube. The animation is about a pistol designed and manufactured by Sig Sauer called the P320. Sig Sauer alleges that the animation, which shows how certain defects in the P320's design or manufacture can cause the P320 to fire without a trigger pull, incorrectly depicts some of the P320's internal geometry. Sig Sauer also claims that the animation makes assertions about the mechanics of the P320 that are physically impossible.

Sig Sauer has moved for a preliminary injunction requiring Bagnell to remove the animation from YouTube, the law firm's website, and "from any other

---

[1] The parties do not distinguish between Bagnell or the law firm with respect to the claims or the personal jurisdiction issues discussed in this order. Accordingly, the court generally refers to Bagnell and the law firm together as just "Bagnell." Any statement the court makes about "Bagnell" is equally applicable to the law firm.

location over which they have control." Doc. no. 29-1 at 5. The preliminary

injunction would also restrain Bagnell from publishing the animation elsewhere in

the future. Bagnell objected to the motion for preliminary injunction, contending,

among other arguments, that the court cannot exercise personal jurisdiction over

him and the law firm. The court scheduled a hearing on the preliminary injunction

motion for June 15, 2022.

Bagnell then moved for expedited consideration of the personal jurisdiction

issue. The court granted that motion and converted the June 15 hearing on the

preliminary injunction motion into oral argument on the subject of personal

jurisdiction.

For the reasons that follow, the court finds that it lacks personal jurisdiction

over the defendants.


## STANDARD OF REVIEW

Once a challenge to personal jurisdiction has been raised, the plaintiff—Sig

Sauer—bears the burden of demonstrating personal jurisdiction. Daynard v. Ness,

Motley, Loadhold, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). In the

absence of an evidentiary hearing,[2] the court uses the prima facie standard to

evaluate whether the court has personal jurisdiction over a defendant. De Laire v.

---

[2] Although the court scheduled an evidentiary hearing on this and other issues related to Sig Sauer's motion for a preliminary injunction, the parties agreed that the court should address the matter of personal jurisdiction on the papers and with the aid of oral argument.

*Voris*, No. 21-cv-131-JD, 2021 WL 1227087, at *2 (D.N.H. Apr. 1, 2021).  Under the

prima facie standard, the court takes the plaintiff's properly supported proffers of

evidence as true and construes those proffers in the light most favorable to the

plaintiff.  *Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 147 (1st Cir. 2021); see *Lin*

*v. TipRanks, Ltd.*, 19 F. 4th 28, 33 (1st Cir. 2021) (explaining that the court takes

the "specific facts affirmatively alleged by the plaintiff as true" regardless of

whether they are disputed but, at the same time, does not credit "conclusory

allegations" or "conclusory averments" without "evidence of specific facts").  The

court also considers any undisputed facts offered by the defendant.  *Kuan Chen v.*

*U.S. Sports Acad., Inc.*, 956 F.3d 45, 54 (1st Cir. 2020).


## BACKGROUND

The parties have no material dispute about the facts as they relate to

personal jurisdiction.  This case revolves around the P320 pistol.  Sig Sauer, whose

headquarters are in New Hampshire, designed and manufactures the P320 in New

Hampshire.

Bagnell and his law firm are Connecticut residents.  Bagnell's practice

includes representing plaintiffs in lawsuits against Sig Sauer alleging that Sig

Sauer's negligent design and manufacture of the P320 allows it to be fired without a

trigger pull.  In other words, according to Bagnell and his clients, the P320

sometimes fires when it is not supposed to fire—such as when it is holstered and

subjected to certain external forces.

Bagnell commissioned the computer-generated animation at issue in this case in 2020.  A Colorado-based company produced the animation.  Doc. no. 22-1 ¶ 42.  The animation purports to depict how the P320 can fire without someone pulling the trigger.  That is, the animation shows how the safety mechanisms in the P320 can fail, resulting in the gun firing in unexpected situations.  Bagnell uploaded the animation to YouTube and the law firm's website in 2021.  Prior to its removal pending the court's decision on Sig Sauer's preliminary injunction motion, the animation was viewed at least 36,000 times on YouTube.  The parties did not submit evidence about how many times the animation was viewed on the law firm's website.

As noted, Sig Sauer alleges that the animation falsely depicts certain components of the P320 and its mechanics.  Sig Sauer brings claims for defamation, violation of § 43(a) of the Lanham Act, and unfair competition under RSA 358-A.

## DISCUSSION

Bagnell contends that this court lacks personal jurisdiction because he and his law firm are Connecticut residents and the animation was posted to the firm's website and to YouTube from Connecticut.  Bagnell adds that Sig Sauer has failed to allege that any New Hampshire resident watched the animation and then decided not to purchase a Sig Sauer gun.  Thus, Bagnell asserts, the only connection between the relevant facts and New Hampshire is Sig Sauer's headquarters, and the court cannot exercise personal jurisdiction over a defendant based only on the

4

plaintiff's contacts with the forum state.  See Walden v. Fiore, 571 U.S. 277, 284 (2014).

Sig Sauer responds that this court has personal jurisdiction over Bagnell because the allegedly defamatory material targets a company headquartered in New Hampshire that is one of New Hampshire's largest employers.  Sig Sauer adds that the alleged defamatory material involves New Hampshire-based activity— namely, the design and manufacture of the P320 pistol.

The Fourteenth Amendment's Due Process Clause[3] prohibits a court from asserting personal jurisdiction over a defendant unless the defendant has sufficient minimum contacts with the forum state to allow the defendant to reasonably anticipate being haled into court there.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  The court may have personal jurisdiction over a defendant through either "general" or "specific" jurisdiction.  See PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019).  In this case, Sig Sauer seeks to establish specific jurisdiction.  The test for determining specific jurisdiction has three prongs, all

---

[3] The Fourteenth Amendment's Due Process Clause applies to the extent Sig Sauer relies on federal-question jurisdiction because the Lanham Act does not authorize nationwide service of process and New Hampshire's long-arm statute, RSA 510:4(I), is coextensive with the Fourteenth Amendment.  See 15 U.S.C. § 1125; United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085-86 (1st Cir. 1992) (explaining the interaction between the Fifth Amendment, Fourteenth Amendment, and Federal Rule of Civil Procedure 4 that results in the Fourteenth Amendment's application in some federal question cases); Sarah's Hat Boxes, L.L.C. v. Patch Me Up, L.L.C., No. 12-cv-399-PB, 2013 WL 1563557, at *3 n.4 (D.N.H. Apr. 12, 2013) (applying Fourteenth Amendment due process analysis to Lanham Act claim).

three of which must be met if the court is to exercise personal jurisdiction over a

defendant:

> **First**, the claim underlying the litigation must directly arise out of, or
> relate to, the defendant's forum-state activities. **Second**, the
> defendant's in-state contacts must represent a purposeful availment
> of the privilege of conducting activities in the forum state, thereby
> invoking the benefits and protections of that state's laws and making
> the defendant's involuntary presence before the state's courts
> foreseeable. **Third**, the exercise of jurisdiction must be reasonable.

Id. (emphases added) (quoting United Elec., Radio & Mach. Workers of Am., 960

F.2d at 1089).

The court addresses only the second prong, purposeful availment, because Sig

Sauer has failed to show it here.  The purposeful availment prong is met if the

defendant engaged in purposeful activity with the forum state that makes the

forum state's exercise of jurisdiction fair, just, and reasonable.  Sawtelle v. Farrell,

70 F.3d 1381, 1391 (1st Cir. 1995).  "The function of the purposeful availment

requirement is to assure that personal jurisdiction is not premised solely upon a

defendant's 'random, isolated, or fortuitous' contacts with the forum state."  Id.  It is

a "highly 'fact-specific'" inquiry.  PREP Tours, Inc., 913 F.3d at 17 (quoting United

Elec., Radio & Mach. Workers of Am, 960 F.2d at 1089).

In the context of defamation claims, the court applies the "effects" test

derived from Calder v. Jones, 465 U.S. 783, 788-89 (1984), to determine whether a

defendant's contacts are sufficient to make the exercise of jurisdiction fair, just, and

reasonable.  E.g., Hugel v. McNell, 886 F.2d 1, 4 (1st Cir. 1989); Brown v. Dash,

2020 WL 6806433, at *9-*10 (D. Mass. Nov. 18, 2020).  Under the effects test, the

court considers the nature of the allegedly defamatory material and its publication, asking whether the forum state was the focal point of the defamatory material and the plaintiff's alleged injuries.  Calder, 465 U.S. at 789.

Although the effects test looks at how the alleged defamation harmed the plaintiff in the forum state, purposeful availment still "focuses on the defendant's intentionality."  See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623 (1st Cir. 2001).  The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."  Walden, 571 U.S. at 284.  The place where the injury occurred and where the plaintiff resides "is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."  Id. at 290.

For example, in Calder, the plaintiff's residency and employment in the forum state were jurisdictionally relevant because the defendants gathered information for a defamatory story from sources in the forum state, the defendants aimed the defamatory story at the forum state, and the defendants published the story in a tabloid with wide circulation in the forum state "knowing that the injury would be felt in the forum."  Swiss Am. Bank, Ltd., 274 F.3d at 624 (citing and discussing Calder's holding).  Specifically, the plaintiff in Calder was a well-known entertainer and California resident who brought an action for libel against the author and editor of a National Enquirer story.  465 U.S. at 785.  Both defendants were Florida residents.  Id.  The National Enquirer, however, had a very large

circulation in California that was nearly twice the circulation of the next highest state.  Id.  In researching the libelous story, the author called sources in California.  Id.  But, beyond writing, editing, and publishing the libelous story, neither defendant had relevant contacts with California.  Id.

Critically, however, "[t]he allegedly libelous story concerned the California activities of a California resident.  It impugned the professionalism of an entertainer whose television career was centered in California."  Id. at 788.  Given those facts plus the defendants' other contacts with California (the author's calls to sources in California and the wide publication of National Enquirer in California) the Supreme Court found that "California is the focal point both of the story and of the harm suffered."  Id. at 788-89.  Accordingly, the Court held that jurisdiction was proper in California based on how the defendants' conduct in Florida affected the plaintiff in California.  See id. at 789.  That is, if a defendant intentionally aims defamatory material at the forum state and knows or should know that the effects of the defamatory material are likely to have a "devastating impact" on the plaintiff in the forum state, then the defendant's knowledge about the defamatory material's effects in the forum state becomes "a purposeful contact or substantial connection whereby the intentional tortfeasor could reasonably expect to be haled into the forum State's courts to defend his actions."  See Hugel, 886 F.2d at 4-5 (citing Calder, 465 U.S. at 789-90).

Calder, however, must be read in light of Walden v. Fiore, a more recent Supreme Court decision that further clarifies the Supreme Court's reasoning in

Calder.  In Walden, the defendant, a police officer in Georgia, wrongfully seized a large sum of money from the plaintiffs while they were travelling from Georgia to their residence in Nevada.  571 U.S. at 279-81.  The defendant knew that the plaintiffs lived in Nevada, and the plaintiffs felt the harm resulting from the seizure—the loss and delayed return of their money—in Nevada.  Id.  After the plaintiffs brought suit in Nevada, the defendant moved to dismiss for lack of personal jurisdiction.  Id. at 281.  The Supreme Court thus addressed "whether a court in Nevada may exercise personal jurisdiction over a defendant on the basis that he knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada."  Id. at 279.

Despite Nevada being the plaintiffs' place of residence and the place where they were likely to feel the most harm resulting from the defendant's tortious conduct, the Supreme Court held that the Nevada court could not exercise personal jurisdiction over the defendant.  Id. at 290.  The Court emphasized that contacts between the plaintiff and the forum state alone do not suffice to show purposeful contacts between the defendant and the forum state.  Id.  ("Calder made clear that mere injury to a forum resident is not a sufficient connection to the forum.").  "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are vindicated.'"  Id. at 285.

The Court acknowledged that, in Calder, it held that "the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the

plaintiff." Id. at 287.  But personal jurisdiction did not exist in Calder merely because the plaintiff happened to live in California.  Id. at 287, 290.  Rather, the defendants' actions—reaching out to sources in California and writing an article for publication in California "that was read by a large number of California citizens" in combination "with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction."  Id. at 288.  In contrast, in Walden, the defendant's actions and the effects of his actions were not "tethered to Nevada in any meaningful way"—at least not beyond the fortuitous circumstance that the plaintiffs happened to live there.  See id. at 290.

Turning to the facts before the court, Sig Sauer has not established under the effects test that Bagnell has sufficient minimum contacts with New Hampshire for the court to assert personal jurisdiction.  Merely making the animation generally available over the internet, such that it was accessible to New Hampshire residents, is not sufficient to show that the animation was aimed at New Hampshire.  See McBee v. Delica Co., Ltd., 417 F.3d 107, 124 (1st Cir. 2005) ("To put the principle broadly, the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum."); BroadVoice, Inc. v. TP Innovations LLC, 733 F. Supp. 2d 219, 225 (D. Mass. 2010) (finding that a "defamatory website" was not aimed at Massachusetts merely because it was about a Massachusetts business and could be accessed by Massachusetts residents).

Further, there is no evidence that Bagnell targeted or directed the website, the YouTube page, or the animation to New Hampshire residents specifically. Although the animation concerns claimed defects of the P320, which was designed and is manufactured in New Hampshire, the animation does not identify where the P320 is designed and manufactured.  There is no evidence that New Hampshire was mentioned on the YouTube page where the animation was uploaded or on the law firm's website.

The only mention of New Hampshire in the animation occurs for a few seconds just before the animation ends, when the animation briefly displays a press release that—according to the release— was issued by Sig Sauer to rebut "social media rumors questioning the safety of the P320 pistol . . . ."  The beginning line of that press release states the location of the release as Newington, New Hampshire. The display of a press release that happens to reference New Hampshire in passing is insufficient to show that Bagnell aimed the animation at New Hampshire and intended the injurious effects of the animation to be felt primarily in New Hampshire.

At bottom, the only link between the animation and New Hampshire is Sig Sauer's own connection to New Hampshire.  See Walden, 571 U.S. at 287-88.  And, during oral argument, Sig Sauer could not identify a single action by Bagnell related to creating or publishing the animation that occurred in New Hampshire and none is apparent from the record.  Thus, the fact that Sig Sauer's headquarters, design, and manufacturing are in New Hampshire "is entirely fortuitous in the

context of the conduct on which plaintiff bases its claims."  See NeoDevices, Inc. v. NeoMed, Inc., No. 08-cv-375-SM, 2009 WL 689881, at *10 (D.N.H. Mar. 12, 2009) (applying effects test and finding purposeful availment prong not met when allegedly false statements about a New Hampshire-based business were not intentionally directed toward New Hampshire); BroadVoice, Inc., 733 F. Supp. 2d at 225.

Sig Sauer argues that this case is similar to de Laire v. Voris and Hugel v. McNell, both of which applied the effects test and found the purposeful availment prong met when individuals suffered reputational harm in New Hampshire.  In de Laire, the court applied the effects test and exercised jurisdiction over an out-of-state defendant who published on the internet an allegedly defamatory article concerning the professional activities of a pastor of a New Hampshire parish.  2021 WL 1227087, at *5.  When preparing the article, its author travelled to and spoke with sources in New Hampshire.  Id. at *4-*5.  Given these facts, the court found that the article's author knew that New Hampshire was the location where the defendant would feel the effects of the defamatory material the most.  Id.

And in Hugel, the plaintiff "had an established reputation as a businessman and public servant" in New Hampshire and the defamatory material attacked the plaintiff's honesty, which resulted in a particular and specific impact on the plaintiff in New Hampshire.  Like de Laire, the likelihood that the impact would be felt principally in New Hampshire was obvious and known to the defendants.  See Hugel, 886 F.2d at 5.

In contrast to <u>de Laire</u> and <u>Hugel</u>, as well as <u>Calder</u>, in this case there are insufficient facts that would have put Bagnell on notice that the animation would have a focused impact on Sig Sauer in New Hampshire. Sig Sauer highlights the extent of its operations in New Hampshire and compares itself to the individuals involved in <u>Calder</u>, <u>de Laire</u>, and <u>Hugel</u>. But Sig Sauer's New Hampshire operations do not necessarily make it like an individual who suffers reputational harm in a forum state as a result of defamation. In other words, the plaintiffs in <u>Calder</u>, <u>de Laire</u>, and <u>Hugel</u> each suffered focused reputational injuries in their respective forum states: the entertainer in California (<u>Calder</u>), the pastor of a New Hampshire parish (<u>de Laire</u>), and the New Hampshire businessperson (<u>Hugel</u>). By contrast, in this case there is no evidence that Sig Sauer's business—selling firearms—is so focused in New Hampshire that the reputational harm suffered by it creates a meaningful contact between Bagnell and New Hampshire.

In sum, Sig Sauer argues that the court should exercise personal jurisdiction over Bagnell based on Sig Sauer's own contacts with New Hampshire, namely, its various operations in the state. But those contacts cannot be imputed to Bagnell. Without allegations or evidence that Bagnell intentionally acted to aim the defamatory material at New Hampshire and knew or should have known that the effects of the allegedly defamatory material would be focused on New Hampshire, Sig Sauer's operations in New Hampshire do not establish the minimum contacts necessary to confer personal jurisdiction.

## CONCLUSION

The court lacks personal jurisdiction over Bagnell.  During oral argument, Sig Sauer requested that, in lieu of outright dismissal, the court transfer this suit to the District of Connecticut in light of the extensive briefing that has already occurred on the preliminary injunction motion.  Bagnell objected but did not articulate a compelling basis to deny transfer.  The court finds that it is in the interest of justice to transfer the case to the District of Connecticut.  See 28 U.S.C. § 1631 (stating that if the "court finds that there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court" where the action could have been brought when it was filed); Cimon v. Gaffney, 405 F.3d 1, 7 & n.21 (1st Cir. 2005) (indicating that § 1631 allows transfer when the court lacks personal jurisdiction or subject matter jurisdiction); Belmont v. Bower, No. 19-cv-1155-LM, 2020 WL 1290356, at *4-*5 (D.N.H. Mar. 18, 2020) (explaining that a presumption in favor of transfer exists under § 1631).

Accordingly, the court directs the clerk of court to transfer this case to the United States District Court for the District of Connecticut.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

July 12, 2022

cc:  Counsel of Record.

14