UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____
                                            )
SIG SAUER, INC.                             )
                                            )
                    *Plaintiff,*            )
                                            )       Civil Action No.:  3:22-cv-00885-JAM
            v.                              )
                                            )       September 7, 2022
JEFFREY S. BAGNELL, ESQ., LLC,              )
and JEFFREY S. BAGNELL.                     )
                                            )
                    *Defendants.*           )       Demand for Jury Trial
_____    )

## <u>AMENDED COMPLAINT</u>

Plaintiff SIG Sauer, Inc. ("SIG") brings this action against defendants Jeffrey S. Bagnell, Esq., LLC (the "Bagnell Firm") and Jeffrey S. Bagnell ("Bagnell") for their role in publishing a false and defamatory video animation purporting to show that SIG's P320 pistol – an iconic weapon in SIG's award winning line of handguns, a version of which serves as the U.S. Army's standard service firearm – is susceptible to firing without a trigger pull (an "uncommanded discharge") due to the supposed "mechanism of failure" depicted in the animation.  The animation's message is false, and critical images that compromise it are distorted, manipulated, or otherwise false and misleading, do not accurately portray the P320's internal components, and conspicuously *omit* or *alter* a number of safety features that would *prevent* such an uncommanded discharge.  If not enjoined, the animation risks irreparably harming the SIG brand, causing significant financial losses, and misleading the public.

1

## INTRODUCTION

1.      This is an action for an injunction directing Defendants to take down an animation falsely depicting SIG's P320 handgun (the "Animation"), apparently copyrighted by Bagnell in 2021, from Bagnell's YouTube channel and the Bagnell Firm's website, and to refrain from publishing the Animation to the public in any form, on any platform, on the internet or in any other media, or in any other way outside of the context of litigation. The Animation, which Defendants claim to have based on a computed tomography scan (CT scan) of a P320, distorts, manipulates, or otherwise misrepresents the P320's internal components, and falsely *omits* or *alters* a number of safety features that would *prevent* an uncommanded discharge as depicted in the Animation.

2.      The Animation is demonstrably false in many ways.  It contains false depictions of key internal components of the P320, makes assertions about the mechanics of the firearm that are physically impossible, and omits certain safety features, all while attempting to induce consumers to believe the Animation is an accurate depiction of an actual P320.  Without limitation, these falsities include:

   a. Depiction of a lumpy and malformed sear face taken from a photograph of an entirely different part covered in grease that falsely suggests that the contours created by the grease are inherent to the part itself;

   b. Depiction of the P320's striker safety notch as being shorter than the engagement face of the striker safety lock, as being oriented against the engagement face of the striker safety lock at a right angle, and as having a radiused corner at its base angle without a relief cut, when in fact (i) the height of the striker notch in an actual P320

2

is as tall or taller than the engagement face of the striker safety lock, (ii) the safety

notch is designed with and exhibits a forward angle in relation to the striker safety

lock, and (iii) there is a relief cut at the base of the striker safety notch, eliminating

any radiused corner;

c. Depiction of the P320's striker as being able to walk off the sear vertically, which

is accomplished—in a series of frames that are obscured to hide the manipulation—

by having two solid parts of the depicted firearm (the slide and frame rail) merge

into one another to occupy the same physical space; and

d. Omission of the current version of the P320 sear, which includes a secondary sear

notch, as well as omission of the anti-rotation leg and other components of the P320

offered for sale by SIG since 2017 while failing to disclose that the Animation does

not depict the current design offered and sold by SIG.

3. These false depictions appear to be willful. It is no accident that in publishing an

animation in 2021 purporting to show that SIG's P320 could fire without a trigger pull, Defendants

inaccurately depicted, distorted or manipulated multiple key components.  Moreover, some of the

images contained in the Animation have characteristics most likely the result of intentional

alteration by physically changing the shape of the part, altering the image digitally, or having two

components occupy the same physical space. Specifically, Defendants used a photograph of a P320

striker foot covered in grease (taken from one of Mr. Bagnell's personal injury cases against SIG),

and superimposed that image on to the Animation's version of the P320 sear to make that part

appear malformed. Presence of the grease makes the face of the part appear lumpy and malformed

3

in the photograph, and that appearance is carried through to (and highlighted in) the Animation as if the part was actually malformed.  But the grease does not make the part actually malformed; in reality the grease is easily wiped away and has no impact on the contours of the part. As a result, key components of the internal mechanisms depicted in the Animation look nothing like the parts of an actual P320, and there is no real-world way for a P320's components to degrade in a manner that would make them resemble those depicted in the Animation.

4.      The Animation, which had been viewed more than 30,000 times at the time of its removal from YouTube, is already causing confusion, as evidenced by various comments on Bagnell's YouTube channel. That confusion was exacerbated by the careful curating of those comments by Bagnell to delete any comments that identify falsities or omissions in the Animation or raise questions about its accuracy.  The continued publication of the Animation will cause SIG to suffer ongoing and irreparable harm by damaging SIG's reputation and goodwill.

## PARTIES

5.      SIG is a New Hampshire-based firearms manufacturer that supplies high-quality firearms to law enforcement, the U.S military, and civilian customers. SIG serves as a trusted partner of the U.S. military and a wide variety of law enforcement organizations. Indeed, the U.S. Army has adopted a version of the SIG P320 as its primary sidearm.

6.      Bagnell is a lawyer residing in Connecticut who is licensed to practice law in that state. Bagnell is the principal of the Bagnell Firm.

7.      The Bagnell Firm is a Connecticut based law firm. The Bagnell Firm maintains a website at www.bagnell-law.com, on which Bagnell links to press releases and articles regarding

4

his firearms-related personal injury litigation, posts client reviews, and invites clients to contact him about his services. The website includes a dedicated page that hosted the Animation.

## JURISDICTION AND VENUE

8.     The Court has personal jurisdiction because Defendants are Connecticut residents.

9.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 in that Plaintiff's claims arise under the Lanham Act. The Court has subject matter jurisdiction over Plaintiff's defamation claim under 28 U.S.C. 1367 as they arise from the same factual basis as Plaintiff's Lanham Act claims.

10.     Venue is proper in this district pursuant to 28 U.S.C. 1391 in that a substantial part of the events giving rise to this cause of action occurred in this district.

## FACTS

### *The P320*

11.     SIG Sauer's P320 is a striker-fired handgun first produced in 2014.



12.     Pulling the trigger of a P320 sets in motion a series of interconnected mechanical steps that disengage the multiple internal safeties and ultimately cause the striker to spring forward

5

and fire a chambered round.  Specifically, pulling the trigger causes the trigger bar to move forward, rotating the captive safety lever upward, which in turn moves the safety lock upward, providing a clear path for the striker to move forward when released.  This trigger bar movement simultaneously causes the sear, which holds the striker pin in its "charged" position (through engagement with the striker foot), to rotate downward, releasing the striker pin and allowing it to spring forward into the primer of a chambered round, causing the firearm to discharge.

13.     SIG has manufactured the P320 since 2014.  Over the years, the P320's general design and method of operation has remained consistent.  In August 2017, SIG implemented a Voluntary Upgrade Program for the P320, implementing certain changes in all P320 firearms manufactured after August 2017, and SIG provided -- and continues to provide -- all owners of P320 model firearms manufactured prior to that date the opportunity to have such changes implemented in their firearm(s) free of charge.  Members of the firearms community frequently refer to the P320s manufactured before August 2017 as "pre-upgrade" pistols, and P320s manufactured after August 2017 or pre-upgrade P320s that have been upgraded under the Voluntary Upgrade Program as "post-upgrade" pistols.

14.     The changes incorporated into the design of the P320 as part of the Voluntary Upgrade Program did not have any effect on the steps required to fire the weapon, or the basic cycle of operations

<em>Publication of the Bagnell Animation</em>

15.     Prior to transfer of this action, Defendants took the Animation down pending a ruling on Plaintiff's motion for preliminary injunction.

16.     Before its removal, the Animation appeared on the Bagnell Firm's website on a dedicated page (https://www.bagnell-law.com/p320-animation) that a consumer could reach by clicking the "P320 animation" link on the website's main menu.  The Animation appeared at the top of the dedicated page, below a banner heading that contains descriptions of recent media appearances by Bagnell and press coverage of Bagnell and the Bagnell Firm.  The Bagnell Firm's website also contained a link to watch the Animation on YouTube (where consumers can leave and respond to comments), as well as a written legend in which Bagnell asserted a 2021 copyright in the Animation.

17.     That Bagnell posted the Animation on his firm's website demonstrates an intention to use the Animation commercially, *i.e.*, to raise awareness of his expertise as a litigator in gun accident cases, in particular those alleging uncommanded discharges involving the P320, and to attract potential clients.  The Bagnell Firm's website places significant emphasis on Bagnell's experience in P320 litigation.  When a consumer goes to the website, the Welcome page gives the consumer the option to "enter" or, alternatively, to read Bagnell's opening statement in one of his cases against SIG.  The consumer who clicks "enter" is taken to the home page, which touts Bagnell's inclusion on a list of the Best Lawyers in New England and highlights his work for plaintiffs in cases against SIG.  From the home page, the consumer can navigate to the "client reviews" page, which includes (at the top of the page) a testimonial from a client in litigation against SIG, or to the "cases" or "practice group" pages, both of which highlight Bagnell's experience in cases against SIG.  Inclusion of the Animation on the website,

7

amidst these other overt examples of advertising, underscores that its purpose is to influence potential clients to purchase Defendants' services.





18.     The Animation also appeared on Bagnell's personal YouTube channel, where it was posted on or about August 28, 2021. According to the view count maintained by YouTube, the Amination had been viewed on Bagnell's YouTube channel over 30,000 times as of the date SIG filed its original Complaint. A viewer could navigate to Bagnell's YouTube channel from the Bagnell Firm's website by selecting the link "watch on YouTube," which appears in the image above, found under the website's "P320 Animation" tab.

19.     The Animation has also appeared on the internet forum "SIG Talk" (an online forum largely dedicated to the discussion of SIG and its products), shared by a user in connection with a discussion of the P320s internal safety features. This indicates that the Animation has begun to circulate among SIG's actual and potential customers.

20.     The opening frames of the Animation contain a prominent written message stating that SIG's P320 has a "mechanism of failure."  The Animation then shows images it represents are "based on" a CT scan of a P320—thus conveying the message that what follows is a true and accurate depiction of the P320.  The Animation then morphs into fully animated images purporting to demonstrate the "mechanism of failure."  According to the Animation, "[n]ormal operation requires [a] trigger pull to discharge the firearm," but it is possible to have a "defective discharge" with "no trigger pull."  To support this claim, the Animation shows what purport to be images of internal components of the P320—parts otherwise not capable of being viewed during the firing of the gun—and depicts the movement and interaction of those internal components in an alleged "defective discharge" scenario.

21.     On both the website and YouTube, Bagnell posted a note thanking High Impact, LLC ("High Impact"), a Colorado-based technical animation studio, "for developing this HD animation based on CT scans and microscopic photography."  Bagnell's statement that the Animation was "based on CT scans and microscopic photography" reasonably communicated to consumers that the depiction of the P320's internal components in the Animation conformed to the actual qualities, features, and appearance of those components in real life.

9

*Procedural History*

22.     SIG initially filed this action in the District of New Hampshire on March 2, 2022.
Defendants removed the Animation from Mr. Bagnell's personal YouTube channel and the
Bagnell firm's website that same day.  On March 28,2022 Defendants stipulated that they "shall
not publish or otherwise disseminate the Animation in any form on the internet pending the
Court's decision on Sig Sauer's Motion for Preliminary Injunction." Dkt. No. 19.

23.     The District of New Hampshire transferred this action to this Court on July 12,
2022 on the grounds that it lacked personal jurisdiction over Defendants.

*False and Misleading Representations of Fact Contained in the Animation*

24.     Defendants misrepresent the P320 firearm in the Animation in three principal
ways: (1) by directly misrepresenting critical features of the firearm common to both pre- and
post-upgrade versions of the firearm, (2) in addition to the misrepresentations common to all
versions of the P320, by omitting certain features that have been included in all P320 firearms
since August 2017, and (3) by actively taking steps to obfuscate the inaccuracies in the
Animation by selectively deleting comments made to the Animation posted on YouTube.com.

*Express Misrepresentations in the Animation*

25.     The Animation contains multiple express misrepresentations or falsities regarding
the P320, applicable to both the pre- and post- upgrade versions of the firearm, which individually
and taken together mislead consumers into the mistaken belief that the firearm is susceptible to
discharging without a trigger pull as depicted in the Animation.

26.     First, the Animation misrepresents the geometry and appearance of the sear face of the P320 model firearm.  Namely, after depicting the face of the sear notch as having exaggeratedly rounded edges and an indented face, the Animation asserts that these "rounded edges" result in an ineffective connection between the sear and striker and lead to the risk of the firearm discharging without a trigger pull.  However, the Animation's depiction of the sear face is false.  The actual surfaces of the sear face are fully formed, uniform, and flat.

Actual P320                                      Animation

  

*Photograph of a pre-2017 P320 sear.*        *P320 sear as depicted in the Animation, falsely displaying a "rollover condition" and an "inset surface."*

27.     The malformed sear face that appears in the Animation is the result of digital manipulation. Specifically, Defendants sent to their graphics vendor, High Impact, the following photograph, which High Impact used to create the "rollover condition" seen in the Animation.

11



*Striker Foot image that Defendants provided to High Impact to create the Animation.*

This image depicts the "face" of a P320 striker foot and was taken on March 17, 2021 during a joint inspection of firearms relevant to personal injury lawsuits brought by Bagnell against SIG. SIG has identified the photograph as depicting the gun at issue in *Mayes v. SIG SAUER*, *Inc*. The photograph shows a P320 striker foot containing a grease-like substance at the top of the vertical face just above where the striker foot engages with the sear face.

28.     Photographs taken during the inspection document the physical appearance of the striker foot both with and without the grease.  The photograph Mr. Bagnell provided to High Impact was taken before the grease was cleaned off the part.  What Mr. Bagnell describes in the Animation as a "rollover condition" is actually just grease, as shown in these before and after images taken at that inspection (which have been rotated 180 degrees to show the orientation of the striker as it would be in the gun):



*Photographs of Mayes Striker Feet Before And After Cleaning*

29.     Although the image (on the left, below) provided by Mr. Bagnell to High Impact was of the grease-covered striker foot, the phantom contours created by the presence of the grease were superimposed in the Animation onto the face of the sear (an entirely different component), and further modified to create the appearance of rounded deformation at the top of the sear, where engagement with the striker foot occurs (as can be seen when comparing the image sent by Mr. Bagnell with the Animation image side-by-side):

Actual P320                               Animation

 


*Photograph of the Mayes striker foot showing grease on its surface.*    *P320 Sear Face as depicted in the Animation.*

30.     Second, the Animation similarly shows the striker "foot" as having what the Defendants describe as a "rollover condition" on its edges and an "inset surface" in its center, and represents that these features contribute to the supposed ineffective connection between the sear and striker. In reality, the striker foot face is flat, and bears edges that are fully formed and uniform.

Actual P320                               Animation



*Photograph of an actual pre-2017 striker foot.*    *Striker foot as depicted in the Animation, falsely displaying an "inset surface" and "rollover condition."*

31.     The Animation's misrepresentation of the P320's sear and striker foot is significant because it depicts the surfaces responsible for holding the striker foot in its charged position as malformed in a way that could decrease engagement. In reality, both the sear and striker foot are flat surfaces that align with each other. The engagement of these components is important to the safety of the gun. The Animation's depiction of the sear as rounded falsely suggests that the striker could disengage from the sear, potentially resulting in an un-commanded discharge.

32.     Third, the Animation depicts the striker foot purportedly "walking off" the sear vertically.  Once again, this depiction is false.  In reality, the striker is held at rest biased at its upwardmost position relative to the sear, with the striker being biased upward within the striker housing, the striker housing being biased upward within the slide, and the slide being biased upward against the firearm's receiver.  This biased positioning makes it physically impossible for the striker of the firearm to move upwards (or "walk off") in relation to the sear.  In the Animation, this upward movement is only made possible by misrepresenting the positioning and dimensions of these parts.   The Animation accomplishes this in a sequence of images by having the slide and the frame rail (both of which are solid parts) merge into each other and overlap, something which is impossible in reality. An example of the Animation's false depiction of the slide and frame rail is below, with markings added to indicate space occupied by the rail (outlined in red) and the slide rail channel (inside the yellow lines), as well as the merged area (solid red shaded portion):



33.     Fourth, The Animation falsely depicts the P320's striker foot and striker housing components by claiming that there is "excessive" space between the striker foot and its housing, supposedly allowing the striker foot to rotate and slip out of engagement with the sear. An example of the Animation's false depiction of the striker housing is below:



34.     The Animation depicts the clearance between the striker foot and housing to be 0.016 inches, whereas the actual clearances between those parts are 0.005 inches for a pre-upgrade P320 and 0.004 inches for a post-upgrade P320.  Thus, the Animation depicts the clearance as approximately four times greater than it is in an actual P320.  Similarly, the Animation depicts the clearance around the cylindrical body of the striker to be 0.033 inches, whereas the actual clearance around the striker is only 0.003 inches.  Thus, the Animation depicts the clearance as approximately eleven times greater than it is in reality.

16

35.     Even were the striker susceptible to rotation in its housing, that condition would not decrease the striker foot's engagement with the sear. This is because any striker foot rotation would in fact cause the edge of the striker foot opposite to the direction of the rotation to extend farther downward towards the sear. The illustration below demonstrates why striker foot rotation would not decrease engagement between the striker foot and the sear.



36.     The Animation's exaggeration of the space between the striker foot and its housing contributes to that false impression that the striker could move up enough to slip past the sear, potentially resulting in an un-commanded discharge.

37.     Fifth, the Animation also falsely depicts the dimensions, downward angle and surface of the striker foot.  The actual striker foot component has a downward angle, extends toward the sear and has a flat surface, not the purported "inset surface" and "rollover condition" depicted in the Animation.  An example of the Animation's false depiction of the striker foot and omission of the striker foot's downward angle is below:

Actual P320                                          Animation



*CT scan of a P320 striker foot (I) and sear (II).*



*Striker foot and sear as depicted in the Animation, omitting the striker foot's downward angle and extension towards the sear.*

38.     The Animation's false depiction of the striker foot is significant because both the striker foot's downward angle towards the sear, and the interface between the flat surfaces of the sear and striker, serve to increase engagement in order to prevent an un-commanded discharge.

39.     Sixth, the Animation does not accurately depict the geometry of the firearm's striker safety notch—a feature which has been present in all P320s since SIG first produced the firearm in 2014 and remains unchanged in current production P320s.  The Animation depicts the striker safety notch as being shorter than the engagement face of the striker safety lock, when in reality the height of the striker safety notch is as tall or taller than this engagement face. Additionally, the Animation omits the presence of the relief cut at the base angle of the striker safety notch, which is present in part to ensure effective and consistent engagement between the striker safety notch and the striker safety lock.  In the image below, the red line on the left of the image shows the top of the safety notch as depicted by the Animation.  This line was duplicated

18

on a scale photo of the actual Striker Safety Notch geometry on the right to ensure consistent proportions.  The images were aligned horizontally via the bottom of the notch as shown by the blue line below.  The yellow line extends from the top of the striker foot as depicted in the animation to the scale photograph to the right.  The side-by-side comparison, along with the corresponding alignment lines, show that the Animation depicts the Striker Safety Notch geometry to be approximately half the height of the actual component.



40.     The Animation's truncation of the safety notch, omission of the safety notch's backward angle, and omission of the relief cut into the safety notch's base is significant as each feature is important for the part to function properly. Their omission creates the false impression that the safety lock could slide past the safety notch, and fail to prevent forward motion of the striker.

41.     Seventh, the Animation depicts the striker safety lock – the component of the firearm that acts in concert with the striker safety notch to prevent forward movement of the

striker in the unlikely event that the striker is released without a trigger pull – as having rounded edges and as having a loose fit against the striker.  This depiction is misleading as the Animation in fact displays only the side of the safety lock (the radius zone) and omits the safety lock's arm, which extends towards the striker and holds the latter component in place until the trigger is pulled (the functioning edge). The striker safety lock's functional edge displays no rollover condition and is in fact nearly sharp.

Actual P320                                               Animation



*Photograph of a P320 safety lock.*             *Safety lock as depicted in the Animation, falsely displaying a "loose fit" and "rollover condition."*

*Other Misrepresentations*

42.     In addition to the express misrepresentations in the Animation common to both pre-upgrade and post-upgrade versions of the P320, Defendants also mislead consumers to believing that the Animation is referring to a version of the firearm currently offered for sale by SIG, including by prominently displaying a 2021 copyright marking.

43.     Specifically, the Animation fails to depict the sear design that has been present in the P320 since August 2017, instead incorporating a distorted depiction of the pre-upgrade version of the sear.   The current sear design incorporates two notches: (i) the primary notch, and

(ii) a secondary notch. The Animation depicts only a distorted version of the single-notch sear, despite the fact that no P320 manufactured since August 2017 has incorporated a single-notch sear.

Actual P320                              Animation

*Photograph of a current P320 sear including both a (i) primary notch and a (ii) secondary notch.*   *The sear as depicted in the Animation, including a distorted face and omitting the secondary notch.*

44.     The Animation misrepresents or omits other characteristics of the P320's anatomy. For example, the Animation depicts a two-piece trigger when the P320 has at all times utilized a single piece trigger.  In addition, the Animation omits springs on the P320's trigger bar, striker safety lock, and safety lever, as well as the firearm's mechanical disconnector and the current "captive" safety lever design (both components have been present in the firearm since August 2017).  These myriad inaccuracies make clear that the Animation has little concern for accuracy and truth and, instead, is intended to convey a false and misleading message.

*Effect of the False and Misleading Representations of Fact*

45.     The Animation has been viewed more than 30,000 times on YouTube as of the filing of this complaint and an unknown number of times on the Bagnell Firm's website.  The Animation has generated a number of comments by YouTube account holders, many of which demonstrate confusion and deception among those who have viewed the Animation and indicate that consumers have been led to believe that the Animation depicts something plausible, when the Animation actually distorts and misrepresents reality.

46.     Bagnell, or someone on his behalf, is actively deleting certain YouTube comments. One significant result of these deletions is to conceal from consumers various comments (now deleted) that raised questions about the accuracy of the Animation.  Bagnell's deletion of viewer comments raising questions about the accuracy of the Animation, while leaving comments that support inaccuracies and amplify the confusion, demonstrates an intention to mislead consumers.

## COUNT I
## FALSE ADVERTISING UNDER 43(a) OF THE LANHAM ACT

47. SIG reincorporates and realleges the allegations set forth in the preceding paragraphs of this Complaint.

48. The Animation published by the Defendants contains false and misleading statements or representations of fact about SIG's product used in commercial advertising.

49. The misrepresentations contained in the Animation are material in that they relate to the inherent qualities or characteristics of the P320 and would likely influence the purchasing decision of a consumer.

22

50. The Animation deceives or has the tendency to deceive a substantial segment of its audience.

51. Defendants placed the Animation into interstate commerce.

52. SIG has been or is likely to be injured as a result of the misrepresentations.

## COUNT II
## DEFAMATION

53. SIG reincorporates and realleges the allegations set forth in the preceding paragraphs of this Complaint.

54. Defendants published the Animation to third parties without exercising reasonable care as to the Animation's accuracy.

55. The Animation constitutes a false and defamatory statement about SIG.

56. No valid privilege applies.

57. SIG has suffered and will continue to suffer damage to its reputation and goodwill as a result of the Defendants' publication of the Animation.

## REQUEST FOR RELIEF

Wherefore, SIG requests the following relief:

A.       A preliminary injunction directing the Defendants to remove the Animation from their websites and from YouTube, and to stop publishing the Animation on any platform, until the conclusion of this litigation.

B.      A permanent injunction directing the Defendants permanently to remove the Animation from their websites and from YouTube, to stop publishing the Animation on any platform, and to make appropriate corrective disclosures.

C.      Compensatory money damages.

D.      Attorneys' Fees and costs pursuant to the Lanham Act, §1117.

E.      Any other Relief that the Court deems appropriate.

Dated:  September 7, 2022

Respectfully submitted,

SIG Sauer, Inc.

By its attorneys,

*/s/ James R. Smart*
James R. Smart (ct20982)
McElroy, Deutsch, Mulvaney & Carpenter, LLP
30 Jelliff Lane
Southport, CT 06890
Telephone: 203-319-4039
Fascimile: 203-259-0251
jsmart@mcmc-law.com

Jeffrey I.D. Lewis (ct13599)
Foley Hoag, LLP
1301 Avenue of the Americas, 25th Floor
New York, New York 10019
Telephone:  212-812-0400
Facsimile:  212-812-0399
jidlewis@foleyhoag.com

Anthony D. Mirenda (*pro hac pending*)
K. Neil Austin (*pro hac pending*)
Stephen K. Garvey (*pro hac pending*)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone:  617-832-1000
Facsimile:  617-832-7000
amirenda@foleyhoag.com
naustin@foleyhoag.com
sgarvey@foleyhoag.com

## <u>CERTIFICATE OF SERVICE</u>

I, James R. Smart, hereby certify that on September 7, 2022 I caused a true and correct copy of this document to be served on the following via the methods of service indicated below:

*Via the CM/ECF system and first class mail*

**Lorraine D. Belostock**
Todd and Weld LLP
One Federal Street
Boston, MA 02110

**Giles Bissonette**
**Henrey Klementowicz**
American Civil Liberties Union of New Hampshire
18 Low Ave.
Concord, NH 03301

**Brian Matthew Hauss**
**Laura Moraff**
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004

**Dan Barrett**
American Civil Liberties Union of Connecticut
765 Asylum Ave., 1st Floor
Hartford, CT 06105

*Via first class mail*

**Joseph M. Cacace**
**Howard M. Cooper**
Todd and Weld LLP
One Federal Street
Boston, MA 02110

*/s/ James R. Smart*
James R. Smart