UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SIG SAUER, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 1:22-cv-00078 (JAM) |
| | : | |
| JEFFREY S. BAGNELL, ESQ., LLC, and JEFFREY S. BAGNELL, | : | |
| Defendants and Counter-Plaintiffs. | : | |

**MEMORANDUM IN OPPOSITION TO RON J. COHEN'S
MOTION TO DISMISS COUNT FOUR**

**I.   Summary**

Counter-Defendant Cohen's Motion should be denied.

The Bagnell parties' Counterclaim states a valid cause of action for aiding and abetting unlawful acts by Sig the corporation, including defamation and unfair trade practices, that have caused harm to the Bagnell parties in the State of Connecticut. Individual liability exists under CUTPA.

**II.   Applicable Law**

**A.   Rule 12 standard**

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The function of a motion to dismiss "is merely to assess the legal

feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). In considering a motion to dismiss, a court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the non-moving party. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). *Komoroski v. State of Connecticut, Dep't of Consumer Prot.,* No. 3:05CV398(WWE), 2006 WL 988243, at *1 (D. Conn. Apr. 13, 2006).

**B.** <u>**There is individual liability under CUTPA**</u>

The plain language of § 42–110b. "clearly indicates that an individual can be liable for a CUTPA violation. Section 42–110b(a) begins with the phrase "[n]o person shall engage in unfair methods of competition...." Further, part of the definition of person includes the term "natural person...." General Statutes § 42–110a(3). Thus, the plain language of CUTPA provides for the imposition of liability on a natural person.

The next question we consider is whether liability under CUTPA may be extended to an individual who engages in unfair or unscrupulous conduct on behalf of a business entity. Section 42–110b directs us to look to the federal courts' interpretation of CUTPA's federal statutory counterpart, the Federal Trade Commission Act (federal act), 15 U.S.C. § 41 et seq. (2006), when determining the scope and meaning of CUTPA. Our review of federal case law discloses that, ***the practice of holding individuals responsible for wrongful acts taken on behalf of business entities, is widespread and well accepted in federal courts, as evidenced by judicial decisions from several federal circuits***. See *POM Wonderful, LLC v. Federal Trade Commission,* 777 F.3d 478, 498–99 (D.C.Cir.2015); *Federal Trade Commission v. E.M.A. Nationwide, Inc.,* 767 F.3d 611,

2

636 (6th Cir.2014); *Federal Trade Commission v. IAB Marketing Associates, L.P.,* 746 F.3d 1228, 1230–31 (11th Cir.2014); *Federal Trade Commission v. Ross,* 743 F.3d 886, 892 (4th Cir.), cert. denied, 135 S.Ct. 92, 190 L.Ed.2d 38 (2014); *Federal Trade Commission v. Direct Marketing Concepts, Inc.,* 624 F.3d 1, 12–13 (1st Cir.2010); *Federal Trade Commission v. Stefanchik,* 559 F.3d 924, 931 (9th Cir.2009); *Federal Trade Commission v. Freecom Communications, Inc.,* 401 F.3d 1192, 1202–1203 (10th Cir.2005); *Federal Trade Commission v. Amy Travel Service, Inc.,* 875 F.2d 564, 573 (7th Cir.1989); see also *Federal Trade Commission v. Instant Response Systems, LLC,* United States District Court, Docket No. 13 Civ. 00976(ILG), 2015 WL 1650914, *9 (E.D.N.Y. April 14, 2015); *Federal Trade Commission v. Millennium Telecard, Inc.,* United States District Court, Docket No. 11–2479(JLL), 2011 WL 2745963, *9 (D.N.J.2011); *Berglund v. Cynosure, Inc.,* 502 F.Supp.2d 949, 956 (D.Minn.2007); *Federal Trade Commission v. National Business Consultants, Inc.,* 781 F.Supp. 1136, 1152 (E.D.La.1991).

The test used by the federal courts is uniformly stated, but it is flexible and highly fact specific in application. In order to hold an individual liable, a plaintiff, after showing that an entity violated [CUTPA], must prove that the individual either participated directly in the entity's deceptive or unfair acts or practices, ***or that he or she had the authority to control them***. See *Federal Trade Commission v. Amy Travel Service, Inc.,* supra, 875 F.2d at 573. The plaintiff then must establish that the individual had knowledge of the wrongdoing at issue. Id. An individual's status as controlling shareholder ***or officer*** in a closely held corporation creates a presumption of the ability to control; *Federal Trade Commission v. E.M.A. Nationwide, Inc.,* supra, 767 F.3d at 636;

3

but is not necessarily dispositive in all cases. See, e.g., *Federal Trade Commission v. Publishers Business Services, Inc.,* 540 Fed.Appx. 555, 558 (9th Cir.2013) (corporate title alone insufficient to establish individual liability), cert. denied, ––– U.S. ––––, 134 S.Ct. 2724, 189 L.Ed.2d 763 (2014). On the other hand, an employee who is not an owner or officer may, under some circumstances, possess the requisite authority. See, e.g., *Federal Trade Commission v. Bay Area Business Council, Inc.,* 423 F.3d 627, 638 (7th Cir.2005) (salaried employee who handled corporate finances, transferred funds to pay entities' expenses and possessed signing authority on corporate accounts "had ample authority to control" corporate defendants); *Federal Trade Commission v. Kitco of Nevada, Inc.,* 612 F.Supp. 1282, 1293 (D.Minn.1985) **\*590** office manager individually liable under federal act where own admissions and other evidence showed he possessed and exercised authority to control company and knowingly engaged in its fraudulent practices). Authority to control may be established by evidence of an individual's conduct, such as his or her "active involvement in business affairs and [participation in] the making of company policy." (Internal quotation marks omitted.) *Federal Trade Commission v. IAB Marketing Associates, L.P.,* supra, 746 F.3d at 1233. Evidence that other employees of an entity deferred to the individual also is relevant. See *Federal Trade Commission v. Freecom Communications, Inc.,* supra, at 401 F.3d at 1205.

The knowledge requirement may be established with evidence showing that the individual "had actual knowledge of [the entity's] material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth." (Internal quotation marks omitted.) *Federal Trade Commission v. Bay Area Business Council, Inc.,* supra,

423 F.3d at 636. "An individual's degree of participation in business affairs is probative of knowledge.... [T]he [plaintiff] is not required to show that a defendant *intended* to defraud consumers in order to hold that individual personally liable." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Federal Trade Commission v. Medical Billers Network, Inc.,* 543 F.Supp.2d 283, 320 (S.D.N.Y.2008).

*Joseph Gen. Contracting, Inc. v. Couto*, 317 Conn. 565, 590–92, 119 A.3d 570, 587–88 (2015) (emphasis added).

**C.** **Personal Jurisdiction**

> [A] court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, ... who in person or through an agent
>
> (1) Transacts any business within the state;
> (2) commits a tortious act within the state ...; [or]
> (3) commits a tortious act outside the state causing injury to person or property within the state ..., if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

*Statek Corp. v. Coudert Bros. LLP,* No. 3:07-CV-00456, 2018 WL 834227, at *1–2 (D. Conn. Feb. 12, 2018)

"[T]he plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "[W]hen a motion to dismiss ... is decided on the basis of affidavits and other written materials," the plaintiff may carry its burden "by pleading in good faith ... legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012); *Whitaker v.*

5

*Am. Telecasting*, 261 F.3d 196, 208 (2d Cir. 2001). In assessing whether such a showing has been made, the complaint's factual allegations are "assumed to be true" and "construed in the light most favorable to the plaintiff." *Deiter*, 702 F.3d at 728; *Whitaker*, 261 F.3d at 208.

For purposes of a Rule 12(b)(2) motion, the Court "must accept the well-pleaded factual allegations contained in plaintiffs complaint as true and resolve all factual disputes in plaintiff's favor." *Thomas v. Ashcroft,* 470 F.3d 491, 495 (2d Cir.2006). Specifically, all allegations are to be construed in a light most favorable to the plaintiff and all factual disputes resolved in plaintiff's favor, regardless of controverting evidence submitted by the defendant. *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993). *See also Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985) (when considering motion to dismiss for lack of personal jurisdiction, court must construe the pleadings liberally for the benefit of the plaintiffs); *CutCo Indus., Inc.,* 806 F.2d at 365 (court must resolve all factual disputes regarding personal jurisdiction in plaintiff's favor).

**III.    Discussion**

A.     ***The Bagnell parties' state a valid claim against Cohen for aiding and abetting unlawful acts.***

The relevant paragraphs of the Bagnell parties' 73-page detailed Answer and Counterclaims are as follows:

*112. I believe this lawsuit was designed to slander, silence, intimidate and burden me with substantial legal fees and costs to interfere with my nationwide advocacy on behalf of victims of the P320 and with my trial preparation in the Guay matter. It was*

6

*designed to destroy my reputation and legal practice in retaliation for bringing the first P320 case and daring to bring others since then. It is, further, retaliation for having one of my wounded clients appear on Good Moring America and Nightline in August 2021 which allowed a large part of the country to hear about this serious problem.*

113. SIG's press release in March 2022 stating that this lawsuit is intended "to ensure that [I am] not allowed to continue deceiving the public about the safety of the P320" is false. It is also absurd given how many federal and state law enforcement agents and civilians all over the country have been injured by this gun:

> SIG SAUER believes that these misrepresentations are willful in nature and is taking action, with the filing of this complaint, to ensure that Mr. **Bagnell is not allowed to continue deceiving the public about the safety of the P320 and use such deceptions in an attempt to generate business for his legal practice**. SIG SAUER is confident that it will prevail on the merits of this case.

(emphasis added).

114. *Sig's press release accuses me of intentional dishonesty regarding the P320, despite settling two cases with my office and a class action suit alleging that the P320 can fire out of battery. No legal privilege attaches to this malicious statement. The release, further, was re-published by several other gun media and business news outlets, and the comments to these articles variously accuse me of "altering" evidence, calling for my disbarment, and "misrepresenting" evidence. Sig has therefore defamed me in my trade and business, i.e., the law, and accused me nationally of conduct irreconcilable with it: lying to the public, and by extension the Court, about the well-known safety problems with the P320. It has acted with malice though I am not required to show malice as a private figure. Nor am I required to show economic damages though I have incurred them.*

7

*115. Sig's allegations of deception against me are indeed interesting given that its CEO, Ron J. Cohen, plead guilty in 2019 in Germany to charges of knowingly violating that country's export control laws regarding shipment of firearms, making false statements, and falsifying documents under oath. https://www.npr.org/2019/02/25/696690043/ceo-of-u-s-gun- maker-faces-jail-in-germany[1] In that case, which involved the shipment of 40,000 Sig firearms from Germany to the USA and then to Colombia, Cohen was alleged to have "covered up the shipment's final destination by submitting false paperwork, known as end-use certificates, to German export officials, stating that the weapons were bound solely for the United States."* **Upon information and belief, it is this individual who authorized the lawsuit accusing me of dishonesty.**

### COUNT FOUR AIDING AND ABETTING
*(Against counter-defendant Ron J. Cohen)*

135. *Paragraphs 1 through 134 are incorporated by reference.*

136. **Counter-defendant Cohen knowingly conspired with, assisted, aided and abetted counter-defendant Sig Sauer, Inc. in inflicting illegal harm upon the Bagnell parties, damaging their reputations, interfering with their representation of wounded clients, and violating the Connecticut Unfair Trade Practices Act and**

---

[1] In its Memorandum, Sig describes this 18-month jail sentence, suspended, $675,000 fine for falsifying an end use certificate, and $12 million corporate fine, innocently as "export related misdemeanors." (Def. Mem. Law, p. 3). While claiming no expertise in German law, this strains credibility: "Cohen, along with two co-defendants, were accused by German prosecutors of breaking that country's export laws by covering up the final destination of the weapons. **In exchange for admitting his involvement in the scheme, Cohen was given an 18-month prison sentence, with all of that time suspended. He was also fined $675,000.** His co-defendants, both based in Germany, received lighter sentences. **SIG Sauer's German division is also ordered to repay more than $12 million**." It is therefore the case, as the Counterclaims allege, that an executive who recently plead guilty to making false statements in all likelihood authorized the litigation against the Bagnell parties. https://www.nhpr.org/nh-news/2019-04-03/sig-sauer-ceo-avoids-jail-time-for-role-in-illegal-arms-shipment

8

*defaming the Bagnell parties.*

*137. Cohen's illegal conduct has been the direct and proximate cause of substantial economic and non-economic damages to defendants, including legal fees, costs, harm to reputation, anxiety, sleeplessness, and other emotional distress.*

These allegations are sufficient at the Rule 12 stage to state a valid claim for aiding and abetting. Connecticut courts have long recognized a civil cause of action for aiding and abetting. *See Carney v. DeWees,* 136 Conn. 256, 262, 70 A.2d 142 (1949). The elements of aiding and abetting include the following: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Halberstam v. Welch,* 705 F.2d 472, 477 (D.C.Cir., 1983). In order to even consider a cause of action for aiding and abetting, the Court must first weigh whether there is any underlying "illegal or tortious activity." A civil action of aiding and abetting cannot stand alone and depends upon the existence of a valid underlying cause of action. *Fink v. Magner*, 988 F. Supp. 70, 72 (D. Conn. 1997).

The Counterclaim alleges that Cohen had knowledge of the illegal or tortious activity, i.e., Sig's defamation and unfair trade practices harming the Bagnell parties, and that he *authorized* it. The very implication by Sig in its Motion that he may not have known of the lawsuit is simply not credible as a matter of common sense: he is the chief executive officer of Sig and presumably does not allow rogue agents or lawyers within his organization to file lawsuits on their own in Sig's name. Against what Sig argues, that the allegation is made on information and belief does not make the allegation infirm

at the Rule 12 stage: all allegations are taken as true and construed in the Bagnell parties' favor. Discovery will uncover the full extent of Cohen's role in selectively targeting the Bagnell parties for a lawsuit as they were preparing for a jury trial in New Hampshire, and whether he did in fact authorize its filing and his involvement if any in drafting the March 2022 Press Release.

**B.** *<u>Personal jurisdiction over Cohen exists</u>.*

[A] court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, ... who in person or through an agent

> (1) Transacts any business within the state;
> (2) commits a tortious act within the state ...; [or]
> **(3) commits a tortious act outside the state causing injury to person or property within the state ..., if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.**

*Statek Corp. v. Coudert Bros. LLP,* No. 3:07-CV-00456, 2018 WL 834227, at *1–2 (D. Conn. Feb. 12, 2018)

Subsection 3 squarely applies in the present case. The Counterclaims allege that Sig, based in New Hampshire, issued a press release nationwide on March 2, 2022 that defamed and harmed the Bagnell parties in Connecticut, and elsewhere. It is not credibly disputed that Cohen derives substantial revenue from Sig's gun selling activities in Connecticut and around the world. It is among the world's largest weapons manufacturers. Nor can it be credibly disputed that Cohen expected or should have reasonably expected that the lawsuit and Press Release would cause harm to the Bagnell

parties.

C. *Cohen's Motion is premature; Sig's Motion to Dismiss is opposed and has not been decided.*

As the Court is aware, Sig's Motion to Dismiss the Bagnell parties' counterclaims is opposed and un-adjudicated. Docket No. 101. Cohen's Motion is therefore premature as that Motion must first be ruled upon before a decision can be made.

IV. Conclusion

For the reasons stated, Cohen's Motion should be denied.

Respectfully submitted,

*/s/Jeffrey S. Bagnell*

Jeffrey S. Bagnell
Federal Bar No. CT18983
Admitted Pro Hac Vice
Jeffrey S. Bagnell, Esq., LLC
55 Post Road West
Westport, CT 06880
(203) 984-8820
jeff@bagnell-law.com

**CERTIFICATION**

I hereby certify and affirm that on December 23, 2022, the foregoing document was served on all known counsel of record pursuant to the Federal Rules of Civil Procedure using the ECF system.

/s/ *Jeffrey S. Bagnell*
Jeffrey S. Bagnell