UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SIG SAUER, INC.,<br><br>                Plaintiff<br><br>     v.<br><br>JEFFREY S. BAGNELL, ESQ., LLC,<br>and JEFFREY S. BAGNELL<br><br>                Defendants. | CIVIL ACTION NO. 1:22-cv-00078 |

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH**

**I.**  **Summary**

The Bagnell parties request that the Court quash a deposition subpoena dated March 9, 2023 from Sig Sauer to third party High Impact, Inc. in Colorado pursuant to Fed. R. Civ. P. 26(b)(3)(A) and 45(d)(3)(A)(iii).[1]

High Impact is the firm that created the animation at issue in the case. The information and testimony sought is clearly protected by the work-product privilege: "[t]he work product rule protects an attorney's interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs and countless other tangible and intangible items.... Work product can be defined as the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation." *Ullmann v. State,* 230 Conn. 698, 714, 647 A.2d 324 (1994).

---

[1] Bagnell parties note for the record that there is also authority preventing the deposition from occurring because of the 100-mile limit in Rule 45 despite the request to take the deposition by remote conferencing. The court in *Broumand v. Joseph*, No. 20-cv-9137 (SDNY, Feb. 27, 2021), stated that virtual testimony should not be used to evade Rule 45(c)'s 100-mile geographic limit. Rule 45(c), the court said, concerns itself with the location of the proceeding at which the deponent would have to testify – not how far a person would have to travel. "Any other reading would render Rule 45(c)'s geographical limitations a nullity," the *Broumand* court said.

1

The Subpoena (Ex. 1) seeks to invade this privilege by subjecting High Impact to questions about "the creation of the Animation," "versions of the Animation" already produced in the case, "any data, images or other information considered or used in creating the Animation," and "communications concerning the creation of the Animation." Ex. 1, Schedule A. The latter are the quintessence of work product. The referenced communications between the Bagnell parties and High Impact regarding the development and creation of the animation all took place with a view to pending litigation, existing litigation, and future anticipated litigation, regarding the P320 pistol around the country. Assuming the communications could even be remembered at this point, the disclosure of any of them would violate the Bagnell parties' work product privilege.

Sig cannot show undue hardship if the Subpoena is quashed because it already has in its possession the animation at issue and all the computer tomography scans and photographs underlying its creation.

## II.     Factual Background

The Bagnell parties' Answer and Counterclaim sets forth detailed facts regarding the creation of the animation, the reason for its creation, and its recent use at trial in the District of New Hampshire in July 2022. Some of the allegations in that document (Ex. 2, ¶¶ 42-46) pertinent to this Motion include the following:

> 42.     *In 2020, in anticipation of upcoming trials, I retained a Colorado company named High Impact, which specializes in forensic animations, to create a demonstrative show how an un-commanded discharge of the P320 can occur.*
>
> 43.     *During a mediation I attended with counsel for Sig in the Vadnais case a few months before the May 2019 trial, I saw that Sig had developed an animation of the P320 and how they claim that it works on the inside. Sig also developed an animation of*

*my client, Deputy Marcie Vadnais, and how she allegedly appeared and moved inside her patrol car on the morning she was shot in February 2018.*

*44.    High Impact had experience with firearms and had previously done an animation of another manufacturer's striker-fired nine-millimeter pistol, [2] contrary to Sig's claim in its March 2022 press release about this lawsuit.*

*45.    The animation High Impact developed shows that a striker-fired pistol differs substantially from the traditional hammer-fired pistol that most Americans are familiar with.  It has no external hammer to be moved back.  Rather, it has an internal "striker" that is held back under constant spring pressure very much like a bow and arrow or crossbow.  This internal condition is very different from a hammer-fired design. Once the slide on a striker fired gun is moved or "racked" forcibly backward, the weapon is fully cocked and in what is known as "condition 0".  The only component holding the striker back is the weapon's sear."  In the illustrative image of a typical striker-fired pistol that appears on the next page, the striker, in red, is held back by the face of the sear in blue:*

---

[2] *As part of a legal settlement, Taurus recalled one million of its Millennium brand striker-fired guns in 2015.  Mr. Miller states in his Affidavit that he formerly worked there from 2015 to 2017 as part of its product development team.  Miller Aff., ¶ 4.  Taurus also paid a $38 million class action settlement regarding defects in its Rossi brand and other handguns.*



46.     My purpose in working with High Impact was to develop an animation of a defective P320 based on CT scan imaging and up-close photographs; it was not to insert a miniature camera inside a P320 to record an actual cycling of the weapon.  To my knowledge, there are no video cameras tiny enough for this purpose, and in any case the detonation and cycling of the gun would destroy it.  It would also present substantial danger to those present.

**III.     Governing Law**

The work product rule protects not only documents and tangible things prepared by an attorney in his or her work, but especially the mental impressions and conclusions contained in them. "The work product rule protects an attorney's interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible items." (Internal citation omitted.) *Ullman v. Connecticut,* 230 Conn. 698, 714, 647 A.2d 324 (1994) Practice Book § 13–3 allows discovery of *ordinary* work product ("documents and tangible things otherwise discoverable") only "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case, and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Ippolitti v. Ridgefield,* Docket No. CV99–0337600S, Superior Court, Judicial District of Danbury at Danbury (August 7, 2000, Moraghan, J.) (2000 Conn.Super.LEXIS 2020 *11). However, an attorney's *opinion* work product in such documents and tangible things is absolutely protected under § 13–3. ("... when the required showing has been made, the judicial authority shall not order disclosure of the mental impressions, conclusions, opinions, or legal theories of any attorney ...") Accord, *Share America, Inc. v. Ernst & Young,* Docket No. CV93–307132S, Superior Court, Judicial District of Fairfield at Bridgeport (February 20, 1998, Thim, J.) (1998 Conn.Super.LEXIS 463, *4) ("... fact work product is subject to discovery upon a showing of 'need' and 'undue hardship' while opinion work product is protected from disclosure.")

Connecticut has adopted a narrower concept of the work product privilege, i.e., the privilege is limited to work product of *lawyers* ... Thus, a lack of involvement by plaintiff's counsel in securing the requested information would bar the application of the work-product

5

privilege to the requested information ... The court concludes that attorney involvement in the production of the requested documents or information is required." (Citations omitted; internal quotation marks omitted.) *Carrier Corp. v. Home Ins. Co.,* Superior Court, judicial district of Hartford-New Britain, Docket No. 35-23-83 (June 12, 1992) [6 Conn. L. Rptr. 478], decision clarified on reconsideration, Superior Court, judicial district of Hartford-New Britain, Docket No. 35-23-83 (August 18, 1992). More recent cases remain in accord. E.g., *Tapia v. Gap, Inc.,* Superior Court, judicial district of Danbury, Docket No. CV-186028955-S (Oct. 1, 2019) [69 Conn. L. Rptr. 359].

"Practice Book § 13-3 provides that certain documents prepared for litigation are discoverable if the moving party shows a substantial need ..." *Metropolitan Life Insurance Co. v. Aetna Casualty & Surety Co.,* 249 Conn. 36, 56 n. 22, 730 A.2d 51 (1999). Practice Book § 13-3(a) requires a "showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the judicial authority shall not order disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." "Once a party has demonstrated that the material sought is work product, then the party seeking discovery has to make the requisite showing of both substantial need and undue hardship to obtain disclosure." *Garcia v. Yale New Haven Hospital, supra,* Superior Court, Docket No. CV 95 0373032.

"'Substantial need' is established if the information contained in the documents is essential to the movant, for example by containing the essential elements of a prima facie case or by containing facts that demonstrate the opposing party's knowledge. There is no substantial

6

need when the documents contain material that is merely helpful but not essential or there are alternative means available to the movant to obtain the substantial equivalent of the information." (Citations omitted.) *Garcia v. Yale New Haven Hospital, supra,* Superior Court, Docket No. CV 95 0373032.

**IV.    Discussion**

A.    ***The Bagnell parties were extensively involved in all aspects of the development and creation of the animation at issue; the work product privilege therefore applies.***

It is not credibly disputed that the Bagnell parties were extensively involved in the development and creation of the animation at issue.  They commissioned it, paid for it, and spent approximately a year in communications with High Impact about how it would depict a malfunction of the original P320 such that it could fire without a trigger pull, as stated by Sig in its August 4, 2017 press release.  (Ex. 3).

For this reason, Sig's attempt to depose High Impact and question it about communications with the Bagnell parties would squarely violate the work-product privilege.

B.    ***Sig already has the animation at issue and all computer tomography images and photographs underlying its creation; it therefore cannot show a substantial need to depose Hight Impact about communications with the Bagnell parties about the animation or how it was created.***

By a previous document subpoena, and consultation with Sig, Sig's counsel already possesses the animation and all the factual data and photographs used in its creation.  The Bagnell parties and representatives for Sig were both present at all imaging events and photographs of the P320 that were used to assist in the creation of the animation, as detailed in the Bagnell parties Answer and Counterclaim.  (Ex. 2).  At all times Sig has had access to all this data since the inception of the P320 cases years ago. Sig therefore cannot show undue hardship if the Subpoena is quashed.

**V.    Conclusion**

For the reasons stated, the Bagnell parties request that the Motion to Quash be granted.

                                                    Respectfully submitted,

                                                    JEFFREY S. BAGNELL, ESQ., LLC, and
                                                    JEFFREY S. BAGNELL,

                                                    */s/ Jeffrey S. Bagnell*
                                                    Jeffrey S. Bagnell
                                                    Federal Bar No. CT18983
                                                    55 Post Road West
                                                    Suite 200
                                                    Westport, Connecticut 06880
                                                    (203) 984 8820
                                                    jeff@bagnell-law.com

Dated: March 15, 2023

**CERTIFICATE OF SERVICE**

      I, Jeffrey S. Bagnell, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                            */s/ Jeffrey S. Bagnell*
                                            Jeffrey S. Bagnell

Dated:  March 15, 2023