UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SIG SAUER, INC.,<br>    *Plaintiff and Counterclaim Defendant*,<br><br>v.<br><br>JEFFREY S. BAGNELL, ESQ., LLC and<br>JEFFREY S. BAGNELL**,**<br>    *Defendants and Counterclaim Plaintiffs*,<br><br>v.<br><br>RONALD J. COHEN,<br>    *Counterclaim Defendant.* | No. 3:22-cv-885 (JAM) |

**ORDER GRANTING MOTIONS TO DISMISS COUNTERCLAIMS AND DENYING MOTION FOR LEAVE TO FILE ADDITIONAL EXHIBIT**

Plaintiff Sig Sauer, Inc. filed this action against attorney Jeffrey S. Bagnell and his law firm. The complaint alleges that the defendants defamed Sig Sauer by means of publishing a video animation showing that the Sig Sauer P320 pistol is susceptible to accidentally firing without its trigger being pulled. The defendants in turn have filed counterclaims against Sig Sauer and its CEO Ronald J. Cohen. Both Sig Sauer and Cohen now move to dismiss the counterclaims. Because the counterclaims fail to allege plausible grounds for relief, I will grant the motions to dismiss. In addition, I will deny the defendants' motion to file an exhibit concerning evidence that is outside the scope of the allegations of their counterclaims.

**BACKGROUND**

Since 2017, Bagnell and his law firm have taken part in 15 lawsuits against Sig Sauer.[1] These lawsuits generally allege that manufacturing defects in Sig Sauer P320s made before 2017

---

[1] Doc. #82 at 8 (¶ 5).

1

have allowed the pistols to fire "uncommanded"—that is, without someone pulling the trigger to make the firearm discharge.[2]

In or around August 2021, Bagnell posted an animation on his firm's website and on YouTube purporting to show the internal manufacturing anomalies causing these uncommanded discharges.[3] Sig Sauer then filed this defamation lawsuit, contending that the video is "demonstrably false" and "contains false depictions of key internal components of the P320."[4]

After Sig Sauer filed its initial complaint in March 2022, it also issued a press release stating that it had sued the defendants because it "believes that the[] misrepresentations [in the animation] are willful in nature," and was acting "to ensure that Mr. Bagnell is not allowed to continue deceiving the public about the safety of the P320 and use such deceptions in an attempt to generate business for his legal practice."[5]

The defendants then filed an answer with counterclaims against Sig Sauer and Cohen.[6] They assert that the statements made in Sig Sauer's press release are false and defamatory, and that Sig Sauer's lawsuit and press release violated the Connecticut Unfair Trade Practices Act.[7] They have additionally filed a claim against Cohen for aiding and abetting Sig Sauer's tortious conduct.[8] Sig Sauer and Cohen have moved to dismiss. In the meantime, the defendants have moved for leave to file an exhibit that they believe supports their defamation counterclaim.

---

[2] *See id.* at 8-9 (¶ 5), 11-16 (¶¶ 14-28).
[3] Doc. #62 at 8-9 (¶¶ 18, 20).
[4] *See* Doc. #1 (original complaint); Doc. #62 (amended complaint). The suit was originally filed in federal court in New Hampshire but was subsequently transferred to this Court. *See* Doc. #38.
[5] Doc. #82 at 67 (¶ 113).
[6] *See id.*
[7] *Id.* at 69-71 (¶¶ 121-137).
[8] The Bagnell parties also included a counterclaim for tortious interference with contract but subsequently consented to dismissal of that claim. Doc. #108 at 10.

**DISCUSSION**

A court considering a motion to dismiss under Rule 12(b)(6) must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal is appropriate when it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law." *Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 93 (2d Cir. 2019). Courts apply the same standard to a motion to dismiss counterclaims as to a motion to dismiss a complaint. *See Zurich American Life Insurance Co. v. Nagel*, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021).[9]

***Defamation***

The defendants first allege that Sig Sauer's press release was defamatory. They take particular issue with the portions of the release that state the litigation is meant to "ensure that Mr. Bagnell is not allowed to continue deceiving the public about the safety of the P320 and use such deceptions in an attempt to generate business for his legal practice" and which otherwise accuse Bagnell of intentional dishonesty.[10]

All parties agree that Connecticut law governs the counterclaims. Connecticut law generally requires a party to prove the following elements to establish a *prima facie* case of defamation: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the [party] to a third person; (3) the defamatory statement was published to a third person; and (4) the [party's] reputation suffered injury as a result of the statement." *Gleason v. Smolinski*, 319 Conn. 394, 430 (2015).

---

[9] Unless otherwise noted, this ruling omits all internal quotation marks, citations, brackets, and other alterations in its quotations and citations of case decisions.
[10] Doc. #108 at 3.

In addition, "the statement must be false . . . and under the common law truth is an affirmative defense to defamation." *Id.* at 431. Moreover, the statement in question "must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." *NetScout Sys., Inc. v. Gartner, Inc.*, 334 Conn. 396, 410 (2020).

As an initial matter, the defendants base their defamation claim on the contents of Sig Sauer's press release about its court complaint rather than on the court complaint itself. That is for good reason because Connecticut has long recognized the "litigation privilege" that prevents statements made in court proceedings from serving as the basis for defamation claims. *See Dorfman v. Smith*, 342 Conn. 582, 590-92 (2022). "In its most basic form, the litigation privilege provides that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy," and "[t]his includes statements made in pleadings or other documents prepared in connection with a court proceeding." *Ammar I. v. Dep't of Child. & Fams.*, 220 Conn. App. 77, 85 (2023).

But is a party free to file a privileged court complaint and then to issue a press release or make other public statements about what the party has alleged in its court complaint? The answer is generally "yes" if the party's statements fall within the scope of the so-called "fair report" privilege. Under the fair report privilege, it is "well established" that if a published report is an "accurate or a fair abridgement of [a] proceeding" such as the filing of a court complaint, "an action cannot constitutionally be maintained for defamation." *Elder v. 21st Century Media Newspaper, LLC*, 204 Conn. App. 414, 422 (2021).

The fair report privilege "requires the report to be accurate," but "[i]t is not necessary that it be exact in every immaterial detail or that it conform to that precision demanded in technical or

4

scientific reporting." *Ibid.* Statements do not exceed the bounds of the fair report privilege if "[a]ny deviations from or embellishments upon the information obtained from the primary sources relied upon were miniscule and can be attributed to the leeway afforded an author who attempts to recount and popularize an . . . event." *Id.* at 427. Thus, for example, "the defendant owes no duty to the plaintiff to use the exact word used by the official [proceeding] as long as the word it chooses is a substantially accurate report of official proceedings." *Idlibi v. Hartford Courant Co.*, 216 Conn. App. 851, 864 (2022).

Although the fair report privilege most commonly applies to claims against media companies arising from their reporting about official proceedings, courts have generally applied the privilege to press releases issued by litigants themselves about the content of a lawsuit that the litigant has filed. For example in *Abkco Music, Inc. v. William Sagan, Norton LLC*, 2016 WL 2642224 (S.D.N.Y. 2016), the court rejected a claim that the plaintiffs' press release announcing the initiation of their lawsuit was defamatory where it accurately summarized the complaint and made clear that the case was still pending. After filing a complaint for copyright infringement, the plaintiffs had issued a statement explaining that the defendants' content was "never properly licensed," that the defendants "have profited in large part because of the significant use of unlicensed" material on their websites, and that they had filed suit "to stop these entities' use of unlicensed works." *Id.* at *1-2, *5-6. The district court noted that the press release made repeated use of "aspirational terms" like "intends" and "hopefully" to convey that the outcome had not yet been determined. *Ibid.* It also found that the press release "d[id] not allege more serious conduct than" that stated in the complaint and concluded that the press release therefore fell within the scope of the fair report privilege. *Ibid.*

Similarly in *Wexler v. Allegion (UK) Limited*, 374 F. Supp. 3d 302, 312 (S.D.N.Y. 2019), the plaintiffs authored a press release stating that they had filed suit against the defendants who were "predators bent on achieving their growth ambitions at the expense of . . . entrepreneurs." The press release further stated that the plaintiff was harmed by the defendants' "dishonesty and shameful acquisition practices," and that the defendants "acquire[] small companies with the intention of capitalizing on their valuable intellectual property and then casting aside and discrediting the dedicated individuals who created it." *Ibid.* The court noted that while it did "not condone the rhetorical hyperbole in the Press Release," it could not say that it "suggest[s] more serious conduct" than what was alleged in the plaintiffs' original complaint and so did not exceed the limits of a fair report. *Id.* at 312.

The law does not generally draw a distinction in the defamation context between the protections accorded to media entities and those accorded to non-media entities. *See Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 101 (2d Cir. 2000). The fair report privilege "is commonly exercised by newspapers, broadcasting stations and others who are in the business of reporting news to the public," but "[i]t is not, however, limited to these publishers" and "extends to any person who makes an oral, written or printed report to pass on the information that is available to the general public." Restatement (Second) of Torts § 611, cmt. (c) (1977). Therefore, I am persuaded that Connecticut would allow the fair report privilege to extend not only to reports by media entities about court proceedings but also to press releases or other public statements by litigants themselves that recount what they have alleged in official court proceedings.

The March 3 press release falls within the bounds of the fair report privilege. Its first sentence states that Sig Sauer has filed a lawsuit which "alleges" that the Bagnell parties have

6

published false information about the P320, and that Sig Sauer "believes" these misrepresentations are willful. This context makes clear that the statement represents the opinions or claims that Sig Sauer is making rather than objective facts. The statements in the press release also mirror those in the initial complaint.[11] The complaint alleges that the video contains "false depictions [that] appear to be willful," that the video "deceives" its audience, that Bagnell "used" the video in its commercial activities, and that Sig Sauer is seeking a permanent injunction directing the Bagnell parties to remove the video from all platforms.[12] These are essentially the same sentiments echoed in the press release. So there are no grounds to decline to apply the fair report privilege to the press release.

The defendants argue that the fair report privilege cannot apply because they have alleged that Sig Sauer acted with malice. But "[t]he privilege exists even though the publisher himself does not believe the defamatory words he reports to be true, and even when he knows them to be false and even if they are libel per se." *Elder*, 204 Conn. App. at 422. Instead, an "abuse of the privilege takes place" only "when the publisher does not give a fair and accurate report of the proceeding." *Ibid.*

The defendants further complain that the press release was re-published by "several other . . . outlets, and the comments to these articles variously accuse [them] of altering evidence, calling for my disbarment, and misrepresenting evidence."[13] But "a plaintiff may not recover damages from the original author for . . . slander arising from the republication of defamatory statements by a third party absent a showing that the original author was responsible for or ratified the republication." *Aguirre v. Bets Care Agency, Inc.*, 961 F. Supp. 2d 427, 455

---

[11] Because the March 3 press release was issued after the plaintiff filed its original complaint, the relevant point of comparison is the language in the original complaint rather than in the currently operative amended complaint.
[12] Doc. #1 at 3 (¶ 3), 15 (¶ 36), 7 (¶ 17), 16-17.
[13] Doc. #108 at 7.

(E.D.N.Y. 2013) (citing *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002)). The defendants plead no facts showing that Sig Sauer was involved in either the republication of the press release or any of the comments made about those republications.

In short, the defendants have not alleged facts in their counterclaim that are enough to overcome the protections afforded by the fair report privilege. Accordingly, I will grant the motion to dismiss the first counterclaim against Sig Sauer.

### *Connecticut Unfair Trade Practices Act*

The defendants additionally claim that Sig Sauer's lawsuit as well as its press release constitute unfair trade practices under the Connecticut Unfair Trade Practices Act (CUTPA). CUTPA prohibits the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a). The statute "provides a private cause of action to any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a prohibited method, act or practice." *Harris v. Bradley Mem'l Hosp. & Health Ctr., Inc.*, 296 Conn. 315, 351 (2010).

First, as to the CUTPA claim that challenges Sig Sauer's filing of this lawsuit, this claim in essence amounts to a claim that Sig Sauer has engaged in vexatious litigation against the defendants for an improper purpose. Under Connecticut law, a plaintiff asserting a statutory or common law vexatious litigation claim must allege—among other things—that the underlying, allegedly vexatious lawsuit terminated in his or her favor. *See Bhatia v. Debek*, 287 Conn. 397, 406 (2008); *Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94 (2007).

Does this same "prior termination" requirement apply to a CUTPA action? The answer is "yes" according to the vast majority of courts that have addressed the issue. *See Leary v. Manstan*, 2015 WL 521497, at *6-8 (D. Conn. 2015) (citing cases); *Treglia v. Wells Fargo Bank,*

*N.A.*, 2015 WL 5134450, at *7 (Conn. Super. Ct. 2015) (same). As Judge Arterton has observed, "[t]he same basic logic applies notwithstanding the difference in the legal elements between a vexatious-litigation tort and a CUTPA claim alleging that purportedly frivolous litigation is itself an unfair trade practice," because "a CUTPA claim founded on litigation must establish that the litigation itself is vexatious or a sham," but "[t]he Court … cannot make this determination where the litigation that forms the basis for the CUTPA claim is still pending before the Court." *Garden Catering–Hamilton Ave., LLC*, 2013 WL 656733, at *2 (D. Conn. 2013). I agree and therefore will dismiss the defendants' CUTPA claim as premature insofar as it is based on Sig Sauer's filing of this lawsuit.[14]

Nor can the defendants' CUTPA claim proceed insofar as it is based on Sig Sauer's press release. Because the press release is not defamatory (as discussed above), there are no grounds to conclude that the issuance of the press release amounted to an unfair or deceptive trade practice in violation of CUTPA. *See NetScout Sys., Inc.*, 334 Conn. at 430; *Vaneck v. Countrywide Home Loans Corp.*, 2006 WL 279366, at *4 (Sup. Ct. Conn. 2006).

### *Aiding and abetting*

Defendants allege that Cohen aided and abetted Sig Sauer "in inflicting illegal harm upon the Bagnell parties, damaging their reputations, interfering with their representation of wounded client[s], and violating the Connecticut Unfair Trade Practices Act and defaming the Bagnell parties."[15] But an aiding-and-abetting claim requires a plaintiff as a predicate to show that there was an underlying tort that the defendant allegedly facilitated. *See Master-Halco, Inc. v. Scillia*

---

[14] Because the CUTPA claim is premature, I have no reason at this time to address whether the CUTPA claim would be precluded on its merits by the litigation privilege. *See generally Dorfman*, 342 Conn. at 619-20 (litigation privilege bars CUTPA claim based on intentionally false discovery responses but "[o]ur holding leaves open the possibility that other CUTPA claims may not be barred by absolute immunity under the litigation privilege"). In the event that there is a termination of this litigation in the defendants' favor, they may seasonably re-plead their CUTPA claim if they have good faith grounds to allege that its falls outside the scope of the litigation privilege.
[15] Doc. #82 at 73 (¶ 136).

*Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 121 (D. Conn. 2010) (citing *Efthimiou v. Smith*, 268 Conn. 499, 505 (2004)). Because I have dismissed the defamation and CUTPA counterclaims, there remain no underlying torts to serve as the basis for an aiding-and-abetting claim against Cohen. Accordingly, I will dismiss the aiding-and-abetting claim.

### *Motion to file supplemental exhibit*

The defendants have separately moved for leave to file an additional exhibit in support of their memorandum in opposition to Sig Sauer's motion to dismiss.[16] The exhibit is an email from Sig Sauer's general counsel to a third party in Canada and which the defendants believe defames them. But if the defendants wish to amend their counterclaim in order to expand the factual predicate for a defamation counterclaim, then the proper course is to file a motion for leave to file an amended counterclaim in compliance with the Court's local rules governing the filing of amended pleadings. *See* D. Conn. L. Civ. R. 7(f). Until such time that there is a pleading which fairly comprehends the predicate for a claim, the Court cannot consider unrelated evidentiary submissions. Accordingly, I will deny the defendants' motion for leave to file an additional exhibit for failure of the defendants to show that this exhibit pertains to allegations within the scope of the pleadings in this case.

---

[16] Doc. #120.

10

## CONCLUSION

For the reasons stated above, the Court GRANTS the motions to dismiss the counterclaims against Sig Sauer and Ronald J. Cohen (Docs. #101, #103) and DENIES the motion for leave to file an additional exhibit (Doc. #120).

It is so ordered.

Dated at New Haven this 10th day of July 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge