UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SIG SAUER, INC. <br><br> *Plaintiff*, <br><br> v. <br><br> JEFFREY S. BAGNELL, ESQ., LLC, <br> and JEFFREY S. BAGNELL <br><br> *Defendants.* | Civil Action No.: 3:22-cv-00885-JAM <br><br> August 3, 2023 |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION FOR RECONSIDERATION**

Pursuant to the Court's July 19, 2023 Order (D.E. # 139), Plaintiff SIG Sauer, Inc. ("SIG") submits this Opposition to Defendants' Motion for Reconsideration (the "Motion") (D.E. # 138) of the Court's July 10, 2023 Order Granting the Motions to Dismiss the Counterclaims Against SIG and Ronald J. Cohen and Denying Defendants' Motion for Leave to File an Additional Exhibit (the "July 10 Order") (D.E. # 136).

The Court should deny Defendants' Motion for several reasons.  First, Defendants fail to identify any "controlling law" as required by the strict standard for a motion for reconsideration. Instead, Defendants ask the Court to predict whether Connecticut courts might adopt the concept described in the paragraph after the illustration to Comment (c) of the Restatement (Second) of Torts § 611 (1977) as an exception to the fair report privilege.  Defendants' request, itself, reflects that there is *no* controlling law on this issue – a requisite for success on a motion for reconsideration.  Second, even if the Court entertained Defendants' proposal to engage in this predictive exercise, it is not at all clear that Connecticut courts would adopt the concept

1

described in the paragraph after the illustration to Comment (c) as an exception or apply it in this case.  Finally, even if the Court were to reconsider the challenged aspects of the July 10 Order, application of the fair report privilege is just one of many meritorious reasons to grant the motions to dismiss Defendants' counterclaims (which other grounds the Court did not reach). Should the Court decide to reconsider – and change course on – the challenged aspects of its July 10 Order, the Court would then be required to consider these other grounds for dismissal and rule on their merits.  For the reasons discussed in earlier submissions (D.E. ## 101, 103, 112 & 114), the ultimate outcome would remain the same: SIG's and Mr. Cohen's motions to dismiss would nevertheless appropriately be granted.

## Argument

### I. Applicable Legal Standards

The standard for granting a motion for reconsideration is "strict."  *Lishan Wang v. Quiros*, No. 3:21-cv-1133 (JAM), 2023 U.S. Dist. LEXIS 19147, at *8 (D. Conn. Feb. 6, 2023) (citing *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021)).  Reconsideration motions are "a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates *exceptional circumstances*."  *Wachovia Mortg., FSB v. Toczek*, 841 F. App'x 267, 272 (2d Cir. 2021) (emphasis added).  A party may obtain relief on such a motion only where it "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Cho*, 991 F.3d at 170; *see also* D. Conn. L. Civ. R. 7(c) ("[Motions for reconsideration] will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order."). Reconsideration should not be used to reframe failed arguments.  *See Fan v. United States*, 710 F. App'x 23, 24 (2d Cir. 2018).

Defendants do not acknowledge the applicable legal standard in their Motion, and they do not come close to meeting the strict standard for a motion for reconsideration. Moreover, there is no reason Defendants could not have raised the arguments asserted in their Motion in their opposition to the motions to dismiss. They should not now be given a second bite at the apple. *See id.*

## II.     Defendants Fail to Identify Any "Controlling Law."

Defendants posit that "controlling law" bars application of the fair report privilege to SIG's March 3, 2022 Press Release, pointing to a so-called "self-conferring exception" found in the paragraph after the illustration to Comment (c) of the Restatement (Second) of Torts § 611 adopted by some courts in other jurisdictions. Defendants, however, fail to identify any Connecticut court that has adopted this paragraph as an exception to the fair report privilege. Almost by definition, Defendants' request, in their motion for reconsideration, that the Court engage in the required predictive exercise as to what Connecticut courts *might* do in this regard reflects that there is no "controlling law" on this issue, and the absence of any "controlling law" dooms their Motion.

Although Connecticut courts look to the Restatement (Second) of Torts § 611 in recognizing the existence of the fair report privilege, *no* Connecticut court has considered or applied the concept described in the paragraph after the illustration to Comment (c), much less adopted it as an exception to the fair report privilege. A court's reliance on one aspect of a *Restatement* section is no guarantee it will follow every aspect of that section. A Washington state court, for instance, explained that "[w]hile Washington courts have followed Restatement (Second) of Torts § 611, we have not adopted the self-reporting exception in comment c[, and w]e decline to do so here." *McNamara v. Koehler*, 5 Wash. App. 2d 708, 716 n.7 (2018); *see*

3

*also In re Gen. Receivership of EM Prop. Holdings, LLC*, 199 Wash. 2d 725, 738 n.9 (2022) ("It is not unusual for courts to adopt only part of a *Restatement* section."). Nor has the Second Circuit weighed in on the applicability of the concept described in the paragraph after the illustration to Comment (c). Put simply, there is no "controlling law" governing this issue, and the Court should deny Defendants' Motion for that reason alone.

Moreover, it is not at all clear that Connecticut courts would adopt the concept described in the paragraph after the illustration to Comment (c) as an exception to the fair report privilege. Courts in this district have explained that "[t]he basis for the fair report privilege is 'the public's interest . . . in having information made available to it as to what occurs in official proceedings and public meetings.'" *Naughton v. Gutcheon*, No. 3:21-CV-00402 (KAD), 2022 U.S. Dist. LEXIS 126465, at *8 (D. Conn. July 18, 2022) (quoting *Elder v. 21st Century Media Newspaper, LLC*, 204 Conn. App. 414, 432 (2021)). Given the important public interest underlying the fair report privilege, it is far from clear that Connecticut courts would categorically limit the privilege as Defendants suggest.

Indeed, there are a number of examples when legislatures have enacted a statutory fair report privilege, evaluated the various policy considerations, and aimed to promote the same important public interest, and they have decided *not* to adopt an exception that would categorically exclude certain speech – such as a press release issued by a litigant about the content of a lawsuit it filed – from the protections of the fair report privilege. As Defendants acknowledge, the statute codifying New York's fair report privilege does not include such an exception. *See Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019) ("The purpose of the statute in part is to implement the public policy in favor of encouraging publication and dissemination of judicial decisions and proceedings as being in the public

interest."). Nor does the statute codifying California's fair report privilege include such an exception. Indeed, the legislative history of that statute makes clear that the California legislature "fully intended to protect as privileged an attorney's communication of a complaint to a newspaper on behalf of his client." *Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 793 (2017). Consequently, if one were to engage in the predictive exercise required by Defendants' Motion, it is more likely that Connecticut courts would follow the determinations made in New York and California in these circumstances.

### III. Even if the Concept Described in the Paragraph After the Illustration to Comment (c) Were Controlling, It Should Not Apply Here, As There Is No Indication SIG Filed This Lawsuit to Abuse the Fair Report Privilege.

Even if Connecticut courts were to adopt the concept described in the paragraph after the illustration to Comment (c) as an exception to the fair report privilege, that concept is clearly intended to prevent *abuse* of the fair report privilege, and there is no indication of such abuse here. *See, e.g.*, *Wayson v. McGrady*, No. 3:18-cv-00163-SLG, 2019 U.S. Dist. LEXIS 140083, at *8 n.26 (D. Alaska June 25, 2019) ("[C]ourts have interpreted [the self-reporting exception in Comment (c)] as being obviously intended to prevent the abuse of the fair report privilege." (internal quotation marks omitted)); *see also* 50 Am. Jur. 2d Libel and Slander § 295 (explaining that self-reporting exception "was intended to prevent abuse of the [fair report] privilege, as where a person might bring a suit or hold a public meeting not with the intention of pursuing the purported objective but to cause harm to another, by pleading or announcing defamatory matter and then using the protective shield of the fair-report privilege to republish the defamatory matter to the world or to a targeted audience"). One Court, for example, has interpreted the concept described in the paragraph after the illustration to Comment (c) to mean that the fair report "privilege will be forfeited only if the defamer illegitimately fabricated or orchestrated events so

as to appear in a privileged forum in the first place. That is the true danger against which the self-reported statement exception must guard." *Rosenberg v. Helinski*, 328 Md. 664, 685 (1992).

The intent underlying the concept described in the paragraph after the illustration to Comment (c) would not be served here, as there is no indication SIG filed suit against Defendants to abuse the fair report privilege. SIG filed its complaint and motion for a preliminary injunction in early March 2022. Along with its moving papers, SIG submitted several declarations, signed under the pains and penalties of perjury, including a lengthy expert declaration of Robert "Buzz" Miller describing in detail the specific misrepresentations in Defendants' Animation. *See* D.E. # 3 Exs. 3-5. Moreover, as this case has progressed over the last year and a half, SIG has meaningfully engaged in the litigation in good faith, amended its complaint, renewed its motion for a preliminary injunction, participated in discovery and motion practice, and obtained deposition testimony supporting its claims from the third-party that helped to create the Animation. There is no evidence indicating SIG filed its complaint with the intent abusing the fair report privilege. Instead, SIG filed suit with the express goal of having Defendants' Animation removed from the Internet to prevent irreparable harm to the SIG brand, significant financial losses, and misleading the public. D.E. # 1 at 1. Accordingly, even if Connecticut courts were to adopt the concept described in the paragraph after the illustration to Comment (c) as an exception to the fair report privilege, it should not apply here.

**IV. Application of the Fair Report Privilege Is Just One of Many Meritorious Reasons to Grant the Motions to Dismiss Defendants' Counterclaims.**

Finally, even if the Court were to conclude that "exceptional circumstances" warrant reconsideration of the challenged aspects of the July 10 Order, application of the fair report

privilege to SIG's March 3, 2022 Press Release is just one of many meritorious reasons to grant the motions to dismiss Defendants' counterclaims.

First, Defendants' Motion is only directed toward certain aspects of the Court's July 10 Order. The Motion does not challenge the Court's denial of Defendants' motion for leave to file an additional exhibit "for failure of the defendants to show that this exhibit pertains to allegations within the scope of the pleadings in this case." D.E. # 136 at 10. Nor does it address the Court's dismissal of Defendants' Connecticut Unfair Trade Practices Act (CUTPA) counterclaim "as premature insofar as it is based on Sig Sauer's filing of this lawsuit," which, of course, is still pending. *Id.* at 9. The Court's ruling on Defendants' Motion, therefore, should have no impact on those aspects of the Court's July 10 Order.

Second, SIG's and Ron Cohen's motions to dismiss Defendants' counterclaims raised multiple grounds for dismissal, not only the application of the fair report privilege to SIG's March 3, 2022 Press Release. As SIG has argued, Defendants' defamation counterclaim fails to state a claim because the challenged statement in the Press Release is not defamatory. *See* D.E. # 101 Ex. 1 at 3-9. The challenged statement is a truthful and accurate description of the lawsuit filed by SIG and is a non-actionable statement of SIG's opinion. *See id.* Likewise, Defendants' aiding and abetting counterclaim fails to state a legally sufficient claim, as it relies far too heavily on Mr. Cohen's status as CEO of SIG and is based on inactionable speculation. *See* D.E. # 103 Ex. 1 at 3-7. Finally, Defendants fail to allege a single fact demonstrating that this Court has personal jurisdiction over Mr. Cohen. *See id.* at 7-8. Granting Defendants' Motion would require the Court to consider these other grounds for dismissal, and to rule in SIG's and Mr. Cohen's favor on those grounds.

**Conclusion**

For the foregoing reasons, SIG requests that the Court deny Defendants' Motion for Reconsideration.

Dated:  August 3, 2023                    Respectfully submitted,

                                                                  SIG Sauer, Inc.

                                                                  By its attorneys,

*/s/ James R. Smart*
James R. Smart (CT Bar ct20982)
McElroy, Deutsch, Mulvaney & Carpenter, LLP
30 Jelliff Lane
Southport, CT 06890
Telephone: 203-319-4039
Fascimile: 203-259-0251
jsmart@mcmc-law.com

Anthony D. Mirenda (*pro hac vice*)
Caroline Holliday (*pro hac vice*)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone:  617-832-1000
Facsimile:  617-832-7000
amirenda@foleyhoag.com
cholliday@foleyhoag.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and accurate copy of this document, which was filed via the Court's ECF system, will be sent electronically by the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                      */s/ James R. Smart*
                                      James R. Smart

Dated: August 3, 2023