UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SIG SAUER, INC.,
    *Plaintiff and Counterclaim Defendant*,

v.

JEFFREY S. BAGNELL, ESQ., LLC and
JEFFREY S. BAGNELL,
    *Defendants and Counterclaim Plaintiffs*,

v.

RONALD J. COHEN,
    *Counterclaim Defendant.*

No. 3:22-cv-885 (JAM)

**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**

The defendants Jeffrey S. Bagnell and his law firm have moved for reconsideration of my prior order dismissing their counterclaims against plaintiff Sig Sauer, Inc. *See Sig Sauer, Inc. v. Jeffrey S. Bagnell, Esq., LLC et al*, 2023 WL 4421769 (D. Conn. 2023). Their defamation counterclaim was based on statements made in a press release that Sig Sauer issued about the filing of this action, which is a federal lawsuit that accuses Bagnell and his law firm of publishing a video making false claims about a manufacturing defect in a particular model of Sig Sauer firearm.

In my ruling dismissing the defamation counterclaim, I started from the proposition that the well-established "litigation privilege" prevented the Bagnell defendants from holding Sig Sauer liable for any allegedly defamatory statements that Sig Sauer made in its court complaint. I then applied the "fair report" privilege to conclude that Sig Sauer could not be liable for

1

statements it made in an accompanying press release that fairly tracked and described the allegations of the complaint.

I noted that "[u]nder the fair report privilege, it is 'well established' that if a published report is an 'accurate or a fair abridgement of [a] proceeding' such as the filing of a court complaint, 'an action cannot constitutionally be maintained for defamation.'" *Id.* at *2 (quoting *Elder v. 21st Century Media Newspaper, LLC*, 204 Conn. App. 414, 422 (2021)). I went on to describe how "[a]lthough the fair report privilege most commonly applies to claims against media companies arising from their reporting about official proceedings, courts have generally applied the privilege to press releases issued by litigants themselves about the content of a lawsuit that the litigant has filed." *Id.* at 3.

In support of this conclusion, I cited case authority from the Southern District of New York as well as commentary from § 611 of the Restatement (Second) of Torts. *See ibid.* (citing *Wexler v. Allegion (UK) Limited*, 374 F. Supp. 3d 302, 312 (S.D.N.Y. 2019), *Abkco Music, Inc. v. William Sagan, Norton LLC*, 2016 WL 2642224 (S.D.N.Y. 2016), Restatement (Second) of Torts § 611 cmt. (c) (1977)). On this basis, I concluded that "Connecticut would allow the fair report privilege to extend not only to reports by media entities about court proceedings but also to press releases or other public statements by litigants themselves that recount what they have alleged in official court proceedings." *Ibid.*

The Bagnell defendants have now moved for reconsideration, primarily on the ground that I overlooked additional commentary from § 611 of the Restatement (Second) of Torts. This additional commentary recognizes a "self-conferring" or "self-reporting" exception to the fair report privilege: that "[a] person cannot confer this [fair report] privilege upon himself by

2

making the original defamatory publication himself and then reporting to other people what he had stated." Restatement (Second) of Torts § 611 cmt. (c).

I agree with the Bagnell defendants that I overlooked this aspect of the Restatement's commentary. But the Bagnell defendants themselves failed to cite or discuss the Restatement's self-reporting exception in response to Sig Sauer's motion to dismiss. They have raised it for the first time in their motion for reconsideration.

Nor do they cite any Connecticut case law that discusses—much less adopts—the Restatement's self-reporting exception to the fair report privilege.[1] Accordingly, they have not met the demanding standard for a motion for reconsideration, which requires a movant to show that there was a clear error or manifest injustice and not merely that the movant wishes to take a crack at relitigating an issue already decided. *See Contant v. AMA Cap., LLC*, 66 F.4th 59, 67 (2d Cir. 2023).

In any event, even considering the merits of the Bagnell defendants' late-raised argument for a self-reporting exception, I predict that the Connecticut Supreme Court would not broadly apply such an exception to categorically extend to any press release or other public statement that a party may make about the allegations it has pled in a court complaint. Instead, in accordance with precedent discussed below, I predict that the Connecticut Supreme Court would adopt a narrower form of the self-reporting exception to apply only if a plaintiff has filed a lawsuit for a bad faith purpose to allow it to exploit the fair report privilege by making otherwise defamatory extra-judicial statements about the lawsuit.

---

[1] To the contrary, the only case that I have found that mentions the self-reporting exception to the fair report privilege in the context of Connecticut law rejects its application with little discussion in the context of a plaintiff who emailed a copy of her lawsuit to the media broadly but without additional statements to the press beyond what was in the complaint. *See Wolf v. Menh,* 2019 WL 3753121, at *4 (D.D.C. 2019), *aff'd on other grounds*, 810 F. App'x 10 (D.C. Cir. 2020).

3

Start with the primary purpose of the fair report privilege: "the basis of the fair report privilege is 'the public's interest . . . in having information made available to it as to what occurs in official proceedings and public meetings.'" *Elder*, 204 Conn. App. at 432 (quoting *Burton v. Am. Lawyer Media, Inc.*, 83 Conn. App. 134, 138 (2004)). The public often learns about a lawsuit only because a plaintiff makes some form of public announcement, such as by a press release. This is a long-accepted practice. For example, the Attorney General of Connecticut routinely issues press releases to announce and summarize the allegations of lawsuits the Attorney General has filed that accuse defendants in otherwise defamatory terms of engaging in unlawful conduct.[2] A broad reading of the self-reporting exception to the fair report privilege would discourage plaintiffs who file lawsuits from speaking publicly at all about their allegations for fear of a defamation lawsuit.

That is why numerous courts have declined to read the Restatement's self-reporting exception in the broad way that the Bagnell defendants suggest. For example, in *Rosenberg v. Helinski*, 328 Md. 664, 685 (1992), the Maryland Court of Appeals noted that "[t]he Restatement offers no case law in support of its blanket denial of the privilege to those persons who report their own defamatory statements made during a court proceeding" and that "[t]he commentary … does not appear in either of the two tentative draft versions of § 611 produced before the

---

[2] *See, e.g.,* Attorney General Tong, FTC Take Action Against Manchester City Nissan for Deceiving Customers, Charging Junk Fees (Jan. 4, 2024) (press release describing filing of a court complaint which "alleges that the dealership, in addition to deceiving consumers, regularly charges them junk fees for certification, add-on products, and government charges without the consumers' consent, sometimes costing them thousands of dollars in unwanted and unauthorized charges" and that "all these practices are deceptive or unfair under Connecticut law"), available at https://portal.ct.gov/AG/Press-Releases/2023-Press-Releases/Attorney-General-Tong-FTC-Take-Action-Against-Manchester-City-Nissan (last accessed Jan. 8, 2024). Similarly, the Connecticut Office of the Chief State's Attorney regularly issues press releases describing the allegations of criminal charges that it has filed. *See, e.g.,* New Canaan Man Charged with Filing Hundreds of Fraudulent Medicaid Claims (Dec. 18, 2023), available at https://portal.ct.gov/DCJ/Press-Room/Press-Releases/12182023Golden (last accessed Jan. 8, 2024). Likewise, the United States Attorney's Office for the District of Connecticut routinely issues press releases describing criminal charges that it has filed. *See* United States Attorney's Office District of Connecticut, News (tab), available at https://www.justice.gov/usao-ct/pr (last accessed Jan. 8, 2024).

4

current, published text." *Id.* at 684-85. The court went on to note that "[t]he commentators and cases interpret § 611 as conferring protection upon any persons who do not act maliciously by commencing judicial proceedings in bad faith and then later repeating their own defamatory statements under the aegis of privilege." *Id.* at 685. "We think this to be the better interpretation of the Restatement; the privilege will be forfeited only if the defamer illegitimately fabricated or orchestrated events so as to appear in a privileged forum in the first place," because "[t]hat is the true danger against which the self-reported statement exception must guard." *Ibid.*

For the same reasons, the United States District Court for the District of Columbia has adopted a narrow construction of the self-reporting exception to the fair report privilege. In *Myers v. D.C. Housing Auth.*, 2021 WL 1167032 (D.D.C. 2021), a plaintiffs' law firm issued an announcement on its website about a sexual harassment lawsuit that it had filed against a defendant, and the defendant in turn filed a defamation counterclaim on the basis of the law firm's website announcement. Citing *Rosenberg*, the district court concluded that "[t]he self-reporting exception . . . attaches only where the claimant files a defamatory complaint, then republishes it in order to avoid liability." *Id.* at *5. And so, the court dismissed the defamation counterclaim because the defendant "ha[d] not pled facts that would support the plausible inference that Plaintiffs filed the Complaint only to later publish statements defaming him," and "[w]ithout allegations that the Complaint itself is defamatory or that Plaintiffs filed the Complaint with a defamatory motive, the self-reporting exception cannot apply." *Id.* at *6.

The New Mexico Court of Appeals has also narrowly construed the self-reporting exception to the fair report privilege in light of the exception's evident purpose, which "was obviously intended to prevent *the abuse* of the fair report privilege." *Stover v. J. Publ'g. Co.*, 105 N.M. 291, 295 (1985) (emphasis added). "For example, a person might bring a suit or hold a

5

public meeting not with the intention of pursuing the purported objective but to cause harm to another, by pleading or announcing defamatory matter and then using the protective shield of the fair report privilege to republish the defamatory matter to the world or to a targeted audience." *Ibid.*; *see also Wayson v. McGrady*, 2019 WL 3852492, at *3 n.26 (D. Alaska 2019) (citing and relying on *Stover* to conclude that absent an abuse of the fair report privilege, the self-reporting exception did not defeat an attorney's claim of privilege for statements he made to the media about a lawsuit he filed).

To be sure, the Bagnell defendants cite contrary precedent from courts in Illinois, Pennsylvania, and South Dakota. *See Sun v. Xu*, 2020 WL 12815227, at *3 (C.D. Ill. 2020) (applying the Restatement's self-reporting exception as a matter of Illinois law); *ZS Assocs., Inc. v. Synygy, Inc.*, 2011 WL 2038513, at *3 (E.D. Pa. 2011) (same for Pennsylvania law); *POET, LLC v. Nelson Eng'g, Inc.*, 2018 WL 791254, at *6 (D.S.D. 2018) (same for South Dakota law).[3]

But, in my view, these cases that apply a categorical self-reporting exception to the fair report privilege are not persuasive. They do not give adequate weight to the public interest in disclosure of court proceedings. Nor do they otherwise grapple with the overbreadth concerns raised in *Rosenberg* and similar cases that sensibly limit the exception to those circumstances suggesting a manipulative abuse of the fair report privilege.

Accordingly, in the context of a party's public statements about the allegations they have made in a court complaint, I predict that the Connecticut Supreme Court would follow

---

[3] Another federal district court has adopted the Restatement's self-conferral exception under Washington law. *See U.S. ex rel. Klein v. Omeros Corp.*, 897 F. Supp. 2d 1058, 1075 (W.D. Wash. 2012). But later Washington appellate precedent runs to the contrary. *See McNamara v. Koehler,* 5 Wash. App. 2d 708, 716 n.7 (2018) (rejecting the Restatement's self-conferral exception to the fair report privilege and ruling that law firm's posting on website about lawsuit it filed was within the scope of the fair report privilege); *see also Matter of EM Prop. Holdings, LLC*, 199 Wash. 2d 725, 738 n.9 (2022) (noting that "[i]t is not unusual for courts to adopt only part of a Restatement section" and citing *McNamara v. Koehler* with approval for the proposition "that Washington courts have adopted Restatement (Second) of Torts § 611 (Am. L. Inst. 1977), but they have not adopted the accompanying self-reporting exception in comment c to that section").

*Rosenberg* and similar cases to conclude that the self-reporting exception applies only if the lawsuit itself was filed for a bad faith purpose of allowing the plaintiff to engage in defamatory extra-judicial statements. Otherwise, a party may claim the protection of the fair report privilege if it can show—as Sig Sauer has done here—that its extrajudicial public statements fairly track and report the allegations of the court complaint.

Sig Sauer filed this lawsuit primarily seeking an injunction against the Bagnell defendants' continued publication of the disputed firearm video. The Bagnell defendants contest at length Sig Sauer's contention that their firearm video is misleading, and they accuse Sig Sauer of filing this lawsuit for retaliatory reasons related to prior and pending litigation.[4] But they have not alleged further facts to plausibly show that Sig Sauer's conduct falls within the narrow form of the self-reporting exception, *i.e.*, that Sig Sauer filed its court complaint for an ulterior purpose of allowing it to make extra-judicial defamatory statements about the defendants.

Accordingly, I will deny the Bagnell defendants' motion for reconsideration with respect to application of the self-reporting exception to the fair report privilege. This means that there are no grounds to reconsider the dismissal of the Bagnell defendants' defamation counterclaim or their related claims for violation of the Connecticut Unfair Trade Practices Act and for aiding and abetting.

For the reasons stated above, the Court DENIES the motion for reconsideration of its order dismissing defendants' counterclaims. (Doc. #138).

It is so ordered.

Dated at New Haven this 8th day of January 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[4] *See, e.g.,* Doc. #82 at 68-69.