UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

_____
SIG SAUER, INC                                )
                                              )
                                              )
                                              )
                     Plaintiff                )          Civil Action No. 1:22-cv-78
                                              )
                  V.                          )
                                              )
                                              )
JEFFERY S. BAGNELL, ESQ., LLC, and            )
JEFFERY S. BAGNELL                            )
                                              )
                                              )
                    Defendants.               )
_____  )

**Supplemental Affidavit of Peter Villani**

I, Peter Villani, hereby depose and state the following:

1) I previously submitted an affidavit in this case. I have been retained to provide this supplemental affidavit and my opinions herein in support of Jeffrey S. Bagnell, Esq., LLC and Jeffrey S. Bagnell's Opposition and Surreply to Sig Sauer's Motion for Preliminary Injunction. I am rendering my time in this matter without charge.

**Reply to Supplemental Affidavit of Sean Toner**

2) The sear and striker components are pieces of metal. They are produced using a metal injection molding (MIM) process. I understand that SIG does not perform any secondary machining on the critical surfaces, including the interface between the two components (striker foot and sear face). MIM produced components are susceptible to areas of uncontrolled variability on their surfaces after they come out of the mold. For surfaces where tight tolerances are required, such as in the safety mechanism of the P320, MIM parts should typically have secondary processing, or machining, to eliminate the variation. I understand that SIG does not perform that secondary machining, but instead uses these components in their raw or unfinished condition in the P320s (both pre- and post-upgrade).

3) Mr. Toner in his supplemental affidavit opines that "the material present on these components" was "in fact a coating of some grease-like substance" on the sear and striker foot faces of the Mayes P320. Toner Supp. Aff. ¶ 6. Mr. Toner's statement that the excess material visible in these photos is a grease-like substance only, and that the surface faces

of these components did not "suffer from deformations or excess material buildup" is inaccurate. *Id.*

4) While there may be some kind of grease-like substance or lubricant on these surface faces in the original photographs, there is also excess metal molding material present under that substance, which is clearly visible on the Mayes striker foot and sear face in the photographs taken both before and after cleaning. I have observed that condition (excess metal molding material) on the striker foot and sear faces in many other P320s that I have personally inspected and photographed as well.

5) The images below show the presence of the excess metal molding material on the Mayes striker foot and sear faces both before and after those components were cleaned.



Image 1. This image shows the Mayes sear face pre-cleaning with the large red arrow pointing to excess metal molding material visible on the upper horizontal edge of the sear face. That is not grease.



Image 2. This image shows the Mayes sear face post-cleaning with red arrows pointing to the excess metal material. Even after this surface was cleaned of apparent grease, the sear face shows raised metal material all along the lower horizontal edge of the sear face. The raised metal material also appears all along the upper horizontal edge of the sear face. Additionally, there is a clear lump of metal in view in the upper right-hand corner of the circle on the right. SIG's lack of secondary machining of this surface to remove these irregularities impedes the sear's positive contact with the striker foot.



Image 3. This image shows the Mayes striker foot pre-cleaning with excess metal molding material present on the lower horizontal edge and the right vertical edge. That is not grease.



Image 4. This image shows the Mayes striker foot post-cleaning with excess metal molding material present. Again, even after this surface was cleaned of apparent grease, the striker foot here shows raised metal material all along the right vertical and lower horizontal edges, as shown by the arrows. This image is taken from Toner's Supplemental Affidavit and the circle was placed on the image by Toner. Toner only circles the upper horizontal edge and ignores the obvious excess material elsewhere, shown by the arrows. SIG's lack of secondary machining of this surface to remove these irregularities, as with the sear face, impedes positive surface contact of the striker foot with the sear face.

6)      I have personally witnessed excess metal molding material on every P320 I have inspected and photographed.  This is because I understand that no secondary machining of these parts is being performed by SIG or its subcontractors.  The parts are simply being dropped into the fire control unit raw and unfinished which, as I stated in my initial affidavit, dangerously reduces positive surface contact areas.

7)      For example, I was retained to inspect and photograph a P320 which was evidence in a then pending criminal prosecution in Tampa, Florida, which was dismissed when the District Attorney determined that the P320 can fire on its own without a trigger pull.  This P320 was the property of a Tampa police officer and was alleged to have fired on its own after being turned up and down in a boy's hand, killing his friend when the gun discharged.  The striker foot of that gun exhibited obvious excess metal molding material on three of its edges (both vertical edges and the bottom horizontal edge):



Image 5.  This image shows the Perez P320 striker foot face bearing excess metal molding material on at least three of its edges around the perimeter. The right vertical edge was the only part of the striker foot precariously contacting its corresponding sear face, which allowed carbon to build up on the sear face from discharges, as shown below.



Image 6. This image shows the carbon build-up on the Perez sear face described above.

8)      Additional photos of P320s that I have inspected, all exhibiting excess metal material on their surface faces, are below:



Image 7 (on previous page). The image on the previous page shows a striker foot surface with obvious raised material around all of the component edges. The photograph was taken by Timothy Hicks while Derek Watkins displayed the image on his laptop during the March 2021 inspection and imaging of four P320s asserted to have discharged on their own (Frankenberry, Mayes, Guay and Kneski) as well as several exemplars. Mr. Toner in his supplemental affidavit ignores the excess material and states that "there is no excess material present." Supplemental Toner Aff., p. 5.



Image 8. This is an image of the striker foot of the P320 issued to Homeland Security agent Jimmy S.C. Jinn, which is at issue in *Jinn v. Sig Sauer, Inc.*, 1:2020cv01122 (SDNY). Excess metal material is clearly present on the right vertical edge (in the red circle) and lower horizontal edge (to the left and above the red circle).



Image 9 (on previous page).  This image shows a sear face of an exemplar P320 in *Vadnais v. Sig Sauer, Inc.*, 3:2018cv00605 (EDVA).  This is a close-up image of a photograph that I understand was among the images sent to High Impact to create the Animation.  The arrow points to excess molding material along the top horizontal edge.  Also visible is an imprint made by the striker-foot, which is circled in the photograph. That imprint shows that there was only a partial striker-foot/sear connection, which is not a secure connection between these two critical safety components.

9)        That is not what the surface faces of these components are supposed to look like. In the report I submitted in the Perez matter, which I attached as Exhibit 1 to my initial Affidavit, I included photographs of properly machined surface faces in other firearms, as shown below.

10)       The vertical striations that appear in the Windham Weaponry sear/disconnector face and Smith and Wesson M&P striker foot photos below show evidence of extra finishing steps having been performed using a grinding/sanding type machine to remove any excess molding material from the positive contact surfaces so that they would properly engage their corresponding parts. I understand that SIG does not utilize this step, also known as "secondary machining," in its manufacturing process before installing the internal components in either the fire control unit or striker assembly, nor does SIG finish the positive contact surface of the safety lock tab after its stamping process is complete. That is what causes the excess material (rollover condition) to be present in SIG's weapons, which leads to the failure of the safety mechanisms in the P320.



Image 10.  Windham Weaponry model AR-15 rifle sear face.  Finished properly with no excess molding material present.



Image 11.  Smith+Wesson model M&P pistol striker foot showing same positive contact
surface finished properly.   No excess molding material present.



Image 12.  Windham Weaponry model AR-15 rifle sear face positive contact surface finished properly.  No excess molding material present.

**Reply to Supplemental Affidavit of Robert "Buzz" Miller**

11)     Mr. Miller states that "it is physically impossible" for the striker foot to walk off the sear face because the P320's slide and rails cannot "occupy the same space." Supp. Miller Aff. ¶¶ 12-13. Mr. Miller's statements and conclusions on this subject seem to fundamentally misunderstand the point that I made in my initial Affidavit and demonstrated in the videos attached as Exhibits 4-6 to my initial Affidavit.

12)     I am not saying that the slide on the P320 moves vertically to such a degree that the sear and striker foot physically separate due solely to the vertical movement of the slide. Instead, I am saying that there is sufficient play between the slide and the rails that some amount of vertical movement is possible, as demonstrated in Exhibits 4-6 of my initial Affidavit. The vertical movement of the slide causes the uneven surface of the striker foot to interact with the uneven surface of the sear face, which results in the striker foot slowly pushing the sear downward with repeated vertical movement of the slide. That is what I refer to as the striker foot "walking off" the sear face. Over time, with repeated vertical movement of the slide, that can result in a loss of engagement between the striker foot and the sear face, causing the striker to move forward toward the round. When it happens gradually, the friction between the uneven surface areas causes the striker foot to gradually push the sear lower and lower until the two parts disengage, and the striker is released. In my initial Affidavit, I explained how that same phenomenon is caused by excessive space in the striker housing.

Signed under the pains and penalties of perjury this 11th day of May, 2022, at Cresskill, New Jersey.

*/s/ Peter Villani*
Peter Villani