UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____
                                            )

SIG SAUER, INC.                      )

                             )

               *Plaintiff,*     )

                             )     Civil Action No.:  3:22-cv-00885-JAM

           v.              )

                             )     April 8, 2024

JEFFREY S. BAGNELL, ESQ., LLC,  )

and JEFFREY S. BAGNELL.       )

                             )

               *Defendants.*   )

_____ )

## PLAINTIFF SIG SAUER'S RESPONSE TO DEFENDANTS' POST-TRIAL BRIEF

Pursuant to the Court's February 28, 2024 order (D.E. #171), Plaintiff SIG Sauer, Inc. ("SIG") submits this brief in response to the post-trial brief filed by Defendants Jeffrey S. Bagnell and Jeffrey S. Bagnell, Esq., LLC (the "Bagnell Firm") (D.E. #175). In SIG's opening post-trial brief (D.E. #176), SIG detailed how the evidence presented at trial established that the video animation published by Defendants on the Internet to promote Defendants' law practice (the "Animation") is false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and demonstrated that SIG is entitled to a permanent injunction prohibiting the use of the Animation in advertising to remedy that Lanham Act violation. In this brief, SIG provides a focused response to allegations and arguments made in Defendants' post-trial brief.

This Lanham Act case is directed against a specific set of false representations made by Defendants in the Animation. As SIG explained in its opening brief, these false depictions involve five critical categories of P320 components: the distorted sear face and striker foot; the steel frame rails and slide channels merging into each other to falsely show upward movement; the distorted striker safety notch geometry and height; the distorted striker safety lock; and the

1

exaggerated gaps between the striker and its housing. At trial, SIG methodically presented evidence, including expert testimony, which demonstrated that Defendants' depictions of these five categories of P320 components are literally and materially false. Rather than respond to these issues—i.e., the specific falsities depicted in the Animation—Defendants in their post-trial brief employ a splatter paint-style approach, attempting to distract from the core issue of truth and falsity by raising myriad other irrelevant issues. Defendants, for example, re-hash arguments asserted in their counterclaims against SIG and its CEO, which have long been dismissed. *See* D.E. #175 at 3; D.E. # 136; *see also* D.E. #151. Without offering any further explanation of relevance, they dedicate more than three pages of their brief to the February 2, 2016 Roscommon video, the relevance of which the Court clearly questioned at trial. *See* D.E. #175 at 15-19; Transcript of Trial held on February 21 and 22, 2024, *see* D.E. #173 & 174 ("Trial Tr.") at 357:25-358:25. And they raise a variety of irrelevant procedural and factual arguments, with virtually *no* citation to the evidence introduced during the two-day trial in this case. Outside of a few scattered citations to the trial record in their brief, Defendants rely almost entirely on Bagnell's affidavit and affidavits from two purported experts filed many months ago, rather than trial testimony and exhibits. Defendants had ample opportunity to present testimony at trial and chose to present only what is in the trial record. Defendants did not introduce these affidavits into evidence or seek to admit them for their truth at trial, and their contents were not subjected to cross examination. Defendants' complete failure to address any of the specific misrepresentations in the Animation and glaring lack of citation to evidence actually admitted at trial underscore their complete lack of any response to SIG's specific allegations of falsity.

## I. Defendants' "Factual Background" Is Unsupported by Record Evidence and Largely Irrelevant

Defendants' "Factual Background" should largely be disregarded by the Court. In their seven pages of background, Defendants only cite to the trial transcript or trial exhibits three times. *See* D.E. #175 at 8, 11, 13. The remainder of their background relies on previous affidavits submitted in the case, which were never offered for their purported "truth," let alone introduced as evidence, at the two-day merits trial. *See* Fed. R. Evid. 801; *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (discussing inadmissibility of hearsay). The Court should disregard all of Defendants' citations to documents or affidavit "testimony" that is not in evidence. *See, e.g.*, *Garnet Analytics, Inc. v. Diversified Sols., Inc.*, No. 3:12CV716 (WWE), 2013 U.S. Dist. LEXIS 159508, at *5 (D. Conn. Nov. 7, 2013) (explaining, after an evidentiary hearing, that factual assertions without record citation would not be considered, and that "[w]ithout citation to the record, an assertion is properly treated as argument and given only the weight the record evidence supports"); *United States v. Brodie*, 524 F.3d 259, 267 (D.C. Cir. 2008) (explaining that counsel is permitted to argue all reasonable inferences from facts in the record but may not argue the existence of facts *not* in the record). Consequently, from the onset, Defendants' brief is faulty, failing to provide the Court with the factual basis for their arguments. The three places where Defendants do point to some trial evidence have no bearing on the truth or falsity of the Animation's depiction of the P320.

### a. SIG's Patent Application

Defendants use the little record evidence they do cite to make completely false statements regarding SIG's alleged admissions of defects within the P320. First, Defendants cite to the approval of SIG's October 2018 application for a patent for a secondary sear notch on the sear used in the post-upgrade P320. Defendants' Exhibit ("Dx") 005. Defendants then make a vague

argument that this patent application somehow supports the truthfulness of the Animation. But this argument is wholly untethered from reality. The image of the P320 components in the patent application show components that are smooth and flat—those images do not look anything like the distorted versions appearing in the Animation. *Compare* Dx005 *with* Px001 at 1:13. Specifically, the sear and striker foot faces in the patent illustration are smooth and flat, which is completely consistent with the various tests conducted by SIG's expert and described in detail for the Court at trial, and completely counter to Defendants' argument. *See* Dx005; *see also* Trial Tr. (Miller Testimony) at 180:11-241:25. Nor does anything in the text of Dx005 support the Animation's depiction of any P320 components; to the contrary, it supports the fact that Defendants' distorted those components in the Animation.

### b. SIG's 2017 Press Release

Defendants point to a 2017 press release which states that while all SIG pistols have effective mechanical safeties, "exposure to acute conditions… may have a negative effect on these safety mechanisms and cause them to not work as designed." Dx002; D.E. #175 at 12. The statements in this press release are irrelevant to the truth or falsity of the Animation's depiction of the P320. The press release does not discuss the Animation or any of the depictions within the Animation, and in no way does the text of the press release support the Animation's deformed depictions of P320 components.

### c. Defendants' Misrepresentation About Alleged Admissions by SIG

Defendants falsely assert that SIG has admitted that the "mechanism of failure" depicted in the Animation can happen. D.E. #175 at 9. SIG has never and would never make such a statement, because the supposed "mechanism of failure" depicted in the Animation is in fact impossible. As described by SIG's expert, Robert Miller, in detail during trial, the "mechanism of failure" depicted in the Animation hinges on misrepresentations and distorted components that

are not found in the P320. Defendants did not introduce any evidence to support the depictions in the Animation. As SIG proved at trial, the only way the Animation was able to purportedly depict its "mechanism of failure" was to distort critical internal physical components of the P320, change the geometry and size of critical safety components, change the dimensions of parts to create gaps where none exist, and merge steel parts into each other in a physically impossible way. Trial Tr. (Miller Testimony) at 243:4-24. Bagnell's claim that SIG has acknowledged this "mechanism of failure" can happen is another false claim that should not be credited.

## II. Defendants' Attempts to Redefine the Misrepresentations at Issue Here Underscore Their Lack of Any Response to SIG's Demonstration at Trial That the Animation Contains Many Literally False Material Misrepresentations

Rather than respond to SIG's specific allegations of falsity—which SIG proved at trial with overwhelming evidence, including expert testimony—in various sections of their post-trial brief Defendants instead seek to change the subject by recasting the central questions.

### a. Section I.A.1 of Defendants' Brief

Rather than address the specific misrepresentations in the Animation, Defendants ask the Court to consider the generalized question "whether the Animation falsely represents that the P320 can fire without a trigger pull." D.E. #175 at 14-22.

To be clear, the answer to this question is unequivocally *yes*—the Animation falsely represents that the P320 can fire without a trigger pull, presenting a purported "mechanism of failure" based on multiple distortions and misrepresentations. At trial, SIG established that the misrepresentations regarding the five critical categories of P320 components work together to create the illusion in the Animation that the P320 can fire without a trigger pull. *See, e.g.*, Trial Tr. (Miller Testimony) at 243:8-24. SIG proved that the Animation relies on a false depiction of

the sear as lumpy and distorted coupled with falsely enlarged space (11x larger) in the fitment of the striker in the striker housing and the false merging of two solid steel parts (in a section of the Animation obscured from viewers), along with significant distortions to the striker safety system and the striker safety lock geometry.  Defendants offered *no* evidence demonstrating that the Animation's depiction of these five critical categories of P320 components was accurate.  Nor could they.  As SIG's expert testified, the Animation made assertions about the internal mechanics of the P320 that are false and physically impossible.  *See, e.g.*, Trial Tr. (Miller Testimony) at 241:2-9.

Moreover, as the Court pointed out during trial, Defendants' phrasing of this question at such a high level of generality completely misses the point.  *See* Trial Tr. at 357:25-358:25.[1] SIG's Lanham Act case is directed against a *specific* set of false representations made by Defendants in the Animation.  SIG is required to prove that the specific assertions made by Defendants in the Animation are false, which it is has done.  As the Court correctly noted, it has to "focus on . . . the factual basis for the [A]nimation."  Trial Tr. at 358:20-21.  Defendants utterly failed to do so.  Instead, Defendants devoted more than three pages of their brief to the Roscommon video in an obvious—and irrelevant—diversion from the lack of any factual basis for the depictions of P320 components appearing in the Animation.  As the Court itself noted at

_____

[1] At trial, the Court offered an apt analogy: "Suppose you have, . . . a car [that] is just, you know, crashing in some way.  I take it your argument is not simply, well, you could put up a video or an animation, if you want to say, that asserts that, who knows, the brakes of the car are made of cheese if in fact the brakes are made of cheese.  And that's a factual matter.  It seems to me that I really have to focus on whether on the factual basis for the animation itself and the fact that the car is proverbially driven off the road or, as you contend, you showed us a video from Michigan that there have been uncommanded discharges.  That doesn't really go towards showing the basis for the video – or the animation."  Trial Tr. at 357:25-358:25.

trial, the Roscommon video bears no relevance to the issues to be decided here, as it offers no

insight whatsoever into the internal components of the P320.  *See id.* at 357:25-358:25.

### b. Section I.A.2 of Defendants' Brief

Next, Defendants ask the Court to consider another generalized question:  "whether it is

false that the Animation does not depict the exact geometry, dimensions, and appearance of the

components of an actual P320 and shows defects which are not found in the actual firearm."

D.E. #175 at 22-23.  This, too, is a misdirection, perhaps seeking to imply (without actually

making the argument) that the falsities and distortions are somehow trivial variances.  The

Animation contains significant, material distortions relating to the size, geometry, and

dimensions of critical internal components of SIG's P320—*i.e.*, "inherent characteristics" of the

firearm—and not immaterial variation, as Defendants appear to suggest (but about which they

offer no evidence).  Even the materials (not in evidence) on which Defendants rely in this

section—i.e., the affidavits of Bagnell and Villani—are not cited for the proposition (and they

certainly do not establish) that the Animation depicts the P320 components truthfully.

In an effort to justify the Animation's distortions, Defendants note that, in the context of

being used as a demonstrative exhibit at trial, an animation "need not be exact in every detail."

*Id.* at 22, 10 n.11.  This, too, is beside the point.  First, while a demonstrative used at trial "need

not be exact," it must of course be a fair and accurate portrayal of what it purports to be, not false

and misleading.  *See Brodeur v. Champion*, No. 3:17 CV 1738 (RMS), 2019 U.S. Dist. LEXIS

138594, at *3 (D. Conn. Aug. 16, 2019) ("In such cases when demonstrative exhibits are used …

the exhibit must constitute an accurate and reasonable reproduction of the object involved."

(internal quotation marks omitted)).

Importantly, however, SIG's Lanham Act claim is challenging the use of the Animation in the context of *advertising,* not as a demonstrative exhibit at trial. These contexts differ in many key respects. At trial, there are carefully calibrated evidentiary safeguards in place to help a factfinder understand the context in which a demonstrative exhibit is presented. Defendants note, for example, that trial judges provide contemporaneous instruction to the jury that an animation is "only a recreation of the proponent's version of the event" and "it should in no way be viewed as the absolute truth," but "like all evidence, it may be accepted or rejected" by the jury. D.E. #175 at 22. For viewers of Defendants' Animation on the Internet, by contrast, there is no neutral judge to provide contemporaneous instructions. There are no rules of evidence. There is no *Daubert* rule. There is no opportunity for cross-examination. Indeed, at this trial, Defendants did not mount any substantive defense to the Animation's false depictions of P320 components.[2] Moreover, Defendants admit that they intended to convey to viewers that the Animation *was* real. Bagnell, for example, testified that the reason he described the Animation on his website and YouTube as "based on CT scans" was to convey that "the data [High Impact] were basing [it] on was real…." Px134 (Bagnell Dep.) at 35:34-37:09.

---

[2] And, when Defendants' purported experts were tested at trial in other cases, Defendants *failed* to meet these standards. Peter Villani's testimony, for example, has been excluded on multiple occasions. *See, e.g.*, *Frankenberry v. Sig Sauer, Inc.*, No. 4:19-cv-02990-JD, D.E. #79 (D.S.C. Feb. 4, 2022) ("Villani should be precluded from testifying in this case because he is unqualified to give any Opinions on firearm design and/or manufacturing defects, and none of his theories have been tested or otherwise supported."); *Mayes v. Sig Sauer, Inc.*, No. 1:19-cv-00146-GNS-HBB, D.E. #89 (W.D. Ky. Mar. 30, 2023) ("Villani's opinions are insufficiently reliable to warrant admission in this case, as they are not based on tested or otherwise corroborated theories."); *Hilton v. Sig Sauer, Inc.*, No. 1:21-cv-00441-MJT, D.E. #65 (E.D. Tex. June 8, 2023) ("Because the Court is not aware of any objective, independent validation of the methodologies used by … Peter Villani, it must grant Sig Sauer's motions to exclude [his] testimonies and opinions."). The Court may take judicial notice of these judicial opinions and orders excluding Villani's testimony. *See Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006).

This Court rejected the exact argument Defendants now make in *Schick Manufacturing v. Gillette Co.*, concluding that: "Gillette's argument that the animated portion of its advertisement need not be exact is *wrong as a matter of law*. Clearly, a cartoon will not exactly depict a real-life situation, here, e.g., the actual uneven surface of a hair or the details of a hair plug. However, *a party may not distort an inherent quality of its product in either graphics or animation*." 372 F. Supp. 2d 273, 285 (D. Conn. 2005) (emphasis added). That is exactly what Defendants have done here.[3]

Finally, Defendants take issue with Robert Miller's testimony that he did not observe "excess material" on the P320 components he observed, D.E. #175 at 23, and that the alleged excess material supposedly "observed" by Defendants was merely an artifact of the microscope's light reflected on appropriately shaped and polished surfaces. Trial Tr. (Miller Testimony) at 185:5-190:15. But, as SIG explained in its opening post-trial brief, *see* D.E. #176 at 16-17, Defendants' claims to the contrary are wholly unsupported. Rather than defend the misrepresentation in the Animation, Defendants instead continue to claim that undefined "excess metal" is present on the sear face and striker foot regardless of the grease, without having performed any examination or testing to support this assertion, and without providing any photographic evidence or physical components to support this assertion, or any rebuttal demonstrations using the microscope available at trial. The only basis offered by Defendants at

---

[3] Defendants also devote a portion of their argument to the issue that "the Animation only depicts the original unmodified P320, rather than the version modified." D.E. #175 at 23. As SIG demonstrated during trial, viewers expressed confusion over which version of the P320 the Animation depicted. *See*, *e.g.*, Px032 ("Does this reflect the pre-upgrade or post-upgrade [fire control unit]?"). And Defendants do not dispute that the Animation depicts a pre-upgrade P320. Regardless, though, this issue is not material to the permanent injunction requested by SIG here, which is based on the numerous material misrepresentations of the internal components of the P320 as depicted in the Animation.

trial for this assertion was the unsupported "say-so" of Peter Villani, which is wholly inadequate. *See* Trial Tr. (Villani Testimony) at 308:2-309:2, 310:1-15, 323:12-14, 324:17-22, 339:2-15; *see also Showers v. Pfizer, Inc. (In re Pfizer Inc. Sec. Litig.)*, 819 F.3d 642, 665 (2d Cir. 2016) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." (quoting *GE v. Joiner*, 522 U.S. 136, 146 (1997))). Defendants have clearly failed to support their claims with evidence or credible testimony.

### c. Section I.A.3 of Defendants' Brief

Finally, Defendants ask the Court to consider the generalized question "whether the mechanism of failure portrayed by the Animation is materially false." D.E. #175 at 24-25. To be clear, the answer to this question, as well, is unequivocally *yes*—the mechanism of failure portrayed by the Animation is materially false. As described above, *supra* Section II.a., SIG established at trial that the misrepresentations regarding the five critical categories of P320 components work together to create the illusion that the mechanism of failure depicted in the Animation can happen, when in fact the Animation's depiction is false. *See, e.g.*, Trial Tr. (Miller Testimony) at 243:8-24. Defendants offered *no* evidence to the contrary.

Because they are unable to prove that the Animation is true, Defendants attempt to turn the case on its head, arguing without any support that "[t]o succeed on this motion, SIG must provide some other cause for the recurrent problem." D.E. #175 at 25. Hypothetical alternate theories not depicted in the Animation are not relevant to SIG's Lanham Act claim and certainly not required for SIG to prove it. Defendants offer no authority to the contrary.

### III. Defendants' Arguments Regarding Materiality and Harm Are Muddled and Incorrect

Defendants include a muddled argument suggesting that "evidence of lost sales or consumer confusion" is required to prove materiality. *Id.* at 25, 31. Defendants do not cite any authority to support this assertion; nor could they find any—as SIG need not show "evidence of lost sales or consumer confusion" to prove materiality. The Second Circuit has defined materiality as "likely to influence purchasing decisions," *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016), and it has not imposed any requirement that this likelihood be proven with "evidence of lost sales or consumer confusion." *See Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 259 (2d Cir. 2014) ("In cases where, as here, the district court has found literal falsity, we have never required a finding of extrinsic evidence of injury to consumers or to the plaintiff."). Rather, when grappling with this question, courts consider whether the challenged misrepresentations relate to an inherent quality or characteristic of the product at issue, such that a consumer's purchasing decision is likely to be influenced. *See, e.g.*, *Apotex*, 823 F.3d at 68; *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001).

Here, the Animation uses false statements and misrepresentations about the size, geometry, and dimensions of five critical categories of P320 components—*i.e.*, "inherent characteristics"—in service of a message that the P320 has the mechanism of failure depicted in the Animation because of those specific alleged internal flaws. As a matter of common sense, these are precisely the types of claims that can be expected to impact a consumer's purchasing decision or opinion of SIG. This point is underscored by the nature of the comments left on Bagnell's YouTube channel, *see, e.g.*, Px031 (*"Should I stop carrying my P320?"*), and by the testimony of Sean Toner, *see, e.g.*, Trial Tr. (Toner Testimony) at 89:6-9 ("[SIG has] a reputation to manufacture reliable, durable, and quality firearms that are precision engineered

that we supply to law enforcement and the military.  So [the Animation's] depiction damages that brand.").

Finally, the December 2020 amendment to the Lanham Act—providing that a plaintiff that demonstrates a Lanham Act violation is entitled to a statutory presumption of irreparable harm—makes clear that SIG need not present affirmative proof of injury to consumers or to SIG. *See* 15 U.S.C. § 1116(a) (noting that a plaintiff seeking a permanent injunction "shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection").  Were it otherwise, Congress's intent in enacting the amendment would clearly be unfulfilled.  Notably, the few out-of-circuit cases which Defendants cite purportedly to support their incorrect assertion that SIG is required to offer evidence of harm, *see* D.E. #175 at 31-32, pre-date the December 2020 amendment to the Lanham Act.  Moreover, even before that amendment, the Second Circuit has been unequivocal that a plaintiff like SIG, seeking an injunction under the Lanham Act, rather than money damages, need not present evidence of an actual loss or diversion of sales.  *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 278 (2d Cir. 1981) ("[P]roof of diversion of sales is not required for an injunction to issue pursuant to § 43(a)."); *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190-92 (2d Cir. 1980) ("Sound policy reasons exist for not requiring proof of actual loss as a prerequisite to § 43(a) injunctive relief.  Failure to prove actual damages in an injunction suit, as distinguished from an action for damages, poses no likelihood of a windfall for the plaintiff.").

In short, the Court should ignore Defendants' attempts to redefine the issues in this case to avoid facing the misrepresentations that SIG is challenging.  As described in detail in SIG's opening post-trial brief, *see* D.E. #176 at 29-31, the evidence presented by SIG at trial

established that the Animation is replete with literally false statements that work together to make the claims of the Animation false.[4]

## IV.    SIG Falls Within the "Zone of Interests" Protected by the Lanham Act

Defendants' argument that SIG does not fall within the "zone of interests" protected by the Lanham Act is likewise without merit.  As described in detail in SIG's opening post-trial brief, *see* D.E. #176 at 22-24, SIG falls within the "zone of interests" protected by the Lanham Act and thus has standing to sue Defendants under that statute because it "allege[s] an injury to a commercial interest in reputation"—namely, that the Animation's false and distorted depiction of the internal workings of the P320 have damaged or will damage SIG's reputation, goodwill, and future business.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014) ("[T]o come within the zone of interests in a suit for false advertising under §1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales.").  The plain language of the Supreme Court's opinion in *Lexmark* makes clear that SIG and Defendants need not be in commercial competition for SIG to bring its claim under the Lanham Act.  *See id.*

Nearly every court to address this issue—including courts in this district—has reinforced that *Lexmark* principle.  *See, e.g.*, *Moreland v. Beso Lounge & Rest. LLC*, No. 3:19-cv-00958 (VLB), 2020 U.S. Dist. LEXIS 162009, at *10 (D. Conn. Sept. 4, 2020) (explaining that "[p]laintiff and defendant need not be competitors for a plaintiff to have standing" to bring a false advertising claim under the Lanham Act); *Geiger v. C&G of Groton, Inc.*, 424 F. Supp. 3d 276, 292 (D. Conn. 2019) (same); *Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, No. 6:17-cv-1542-Orl-31DCI, 2018 U.S. Dist. LEXIS 182131, at *24 (M.D. Fla. Oct. 24, 2018) (same); *Educ. Impact, Inc. v. Danielson*, No. 14-937 (FLW)(LHG), 2015 U.S. Dist. LEXIS 9467,

---

[4] In their post-hearing brief, Defendants do not dispute that the Animation was published in interstate commerce.  Thus, SIG has established that element of its Lanham Act claim.

at *37-38 (D.N.J. Jan. 28, 2015) (same); *Diamond Resorts Int'l, Inc. v. Aaronson*, No. 6:17-cv-1394-Orl-37DCI, 2018 U.S. Dist. LEXIS 23574, at *6-7 (M.D. Fla. Jan. 26, 2018) (same); *Tobinick v. Novella*, 142 F. Supp. 3d 1275, 1279-80 (S.D. Fla. 2015) (same).

The interpretation of *Lexmark* espoused by the small cluster of 2020 decisions from the District of Arizona on which Defendants rely, *see* D.E. #175 at 26-27, contradicts the plain language of *Lexmark*, has not gained any traction anywhere else, and has been explicitly criticized by other district courts. *See Roof Maxx Techs., LLC v. Rourk*, 2021 U.S. Dist. LEXIS 153487, at *30 n.2 (S.D. Oh. Aug. 16, 2021) (explaining that *ThermoLife* "diverts from *Lexmark*'s holding" and that "this Court believes that *ThermoLife* misread *Lexmark* and therefore disregards this non-binding authority"). There is no requirement under the Lanham Act that plaintiff and defendant be in commercial competition, and the Court should not impose one here.

## V. Defendants' Animation Is Commercial Advertising

Defendants also seek to dodge liability for their misrepresentations by arguing that the Animation is not "commercial speech." *See* D.E. #175 at 29-31. They contend that expression qualifies as commercial speech only if it relates solely to the economic interests of the speaker and its audience. *See id.* at 29. But the very cases Defendants cite reveal that they are wrong. In *Bolger*, for example, the Supreme Court recognized that speech may "constitute commercial speech notwithstanding the fact that [it] contain[s] discussions of important public issues." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67-68 (1983). The Court in *Bolger* first referred to a "core notion of commercial speech"—i.e., "speech which does 'no more than propose a commercial transaction.'" *Id.* at 66. But it went on to hold that the challenged mailings that "cannot be characterized merely as proposals to engage in commercial transactions" nevertheless constituted commercial speech. The Court engaged in a context-specific analysis and determined that the combination of particular factors present—i.e., that the

14

speech was in an advertisement; referred to a specific product; and was economically motivated—supported the lower court's finding that the mailings were commercial speech. In *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 257 (4th Cir. 2017), the court made clear that the *Bolger* factors "are illustrative, but none are determinative. A message may bear many of these qualities yet not be commercial speech; and a message may lack some of these qualities yet still be commercial speech." In other words, the test for whether speech is commercial is highly contextual.

Here, as outlined in detail in SIG's opening post-trial brief, *see* D.E. #176 at 25-28, the context surrounding the Animation—which the viewing public would see first and last—clearly communicates that the Animation is advertising presented to promote Bagnell and his firm, by demonstrating to potential clients Bagnell's expertise as a litigator in gun accident cases, in particular those alleging that a P320 fired without a trigger pull, and to attract potential clients. Moreover, Defendants in a backhanded way appear to concede that they had an economic motivation for posting the Animation. *See* D.E. # 175 at 30 ("Certainly, Mr. Bagnell does need to be able to financially support his practice and his family."). Moreover, "[a] for-profit company is often presumed to have primarily economic motivations for its speech." *Handsome Brook*, 700 F. App'x at 258. And despite Defendants' assertion that the Animation was commenting on a public issue, the Animation itself includes no such explicit claim. *See Bolger*, 463 U.S. at 67-68 ("Advertisers should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues.").

Regardless, placing the Animation on Defendants' website to purportedly demonstrate Bagnell's skill as a litigator and familiarity with the P320 as part of Defendants' solicitation of prospective clients is ample evidence that the Animation used in this context is commercial

advertising.  Here, as outlined in detail in SIG's opening post-trial brief, *see* D.E. #176 at 25-28, the evidence presented by SIG at trial satisfied the test for commercial advertising.

## VI. Defendants' Arguments Regarding Delay Are Without Merit

Defendants' argument that the approximately six months elapsing between Defendants' publication of the Animation (in late August 2021) and SIG's filing this case (in early March 2022) provides any justification to deny SIG's request for permanent injunction is flawed.  As a threshold issue, Defendants have not established *when* SIG became aware of Defendants' publication of the Animation.  Defendants assert, without pointing to any proof, that SIG knew about the Animation starting in June 2021.  D.E. #175 at 4.  Defendants cite no record evidence to support this, and the trial evidence demonstrates (a) that the Animation was not completed by High Impact until late July, and (b) that Defendants published the Animation on their website in August.  In fact, the only trial testimony as to SIG's awareness came from SIG's witness, Sean Toner, who testified that he became aware of the Animation sometime in the fall of 2021 after SIG's legal counsel pointed it out to him.  Trial Tr. (Toner Testimony) at 64:18-22.  At some point after that, SIG located and engaged its expert, Robert Miller, who then reviewed the Animation and conducted the various examinations and testing described in his testimony at trial. *See* Trial Tr. (Miller Testimony) at 180:11-241:25.  Once again, Defendants attempt to craft their own version of the facts divorced from any evidentiary backing.

Defendants' legal argument is equally lacking.  As legal support, Defendants cite three *preliminary injunction* cases; Defendants do not point to a single case analyzing the impact of delay on the availability of permanent injunctive relief after trial.  While irreparable harm "is required for the imposition of any injunctive relief, preliminary or permanent, the 'imminent' aspect of the harm is not crucial to granting a permanent injunction." *Aruba Hotel Enters. N.V.*

*v. Belfonti*, 611 F. Supp. 2d 203, 214 n.10 (D. Conn. 2009) (quoting *Rodriguez by Rodriguez v. DeBuono*, 175 F.3d 227, 235 n.9 (2d Cir. 1998)).  The cases upon which Defendants rely are all in the preliminary injunction context, where the courts were evaluating whether to grant "drastic" or "speedy" relief *before* getting to trial on the merits.  That question is no longer relevant here, as Defendants voluntarily took down the Animation and the case has now proceeded to the permanent injunction stage after a trial on the merits.  For delay to play a part in a denial of a permanent injunction, the period of delay must rise to the level of laches.  *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985).  To prove a laches defense, Defendants are required, among other things, to present evidence of prejudice caused by the delay, which Defendants have not done.  *See Costello v. United States*, 365 U.S. 265, 282 (1961).

## VII.    Defendants' Assertion About SIG's Withdrawn Defamation Claim Are False and Irrelevant

Defendants claim that SIG withdrew its defamation claim against them because it could not prove actual malice.  D.E. # 175 at 32.  Not so.  As Defendants well know from discussions regarding narrowing the scope of the Bagnell deposition in the lead up to filing the parties' Joint Stipulation Regarding the Issues Remaining in the Case, D.E. # 154, SIG agreed to stipulate to narrowing its case to the Lanham Act claim for the sake of efficiency, to reduce scope and burden of discovery in the weeks just prior to this trial, and to focus the issues for trial to reach an efficient resolution.  Regardless, in fact, the evidence presented by SIG at trial would satisfy the elements of the defamation claim, but SIG chose, as is its right as Plaintiff, not to pursue a defamation claim in this proceeding.  SIG's withdrawal of the defamation claim has no bearing on the Court's consideration of this case.

Under its Lanham Act claim, SIG does not need to prove actual malice, and the Court need not make any finding as to actual malice.  Regardless, there is ample evidence in the record

that shows Defendants' malice in the creation and distribution of the Animation. Defendants directed High Impact to make changes to the Animation in ways they knew to be false. High Impact testified that the initial version of the Animation started as an accurate portrayal of CT scan data, as shown by the wireframe comparison that they provided to Bagnell. Bagnell and his team then instructed High Impact to change the Animation to instead depict the image of a lumpy, deformed striker foot on the sear face in the Animation. Px133 (High Impact Deposition) at 13:51-14:30, 15:26-16:27, 56:19-59:02; Px018; Px009; Px015. Bagnell provided these instructions knowing that the photograph on which the changes were based showed lumpy contours caused by grease, and that this grease had been easily wiped away with a Q-tip, revealing the flat surface underneath. Trial Tr. (Toner Testimony) at 85:18-86:4, 86:25-87:16; Px076; Px133 (High Impact Dep.) at 56:19-59:35. Defendants also instructed High Impact to make other misleading and distorting changes to the Animation. For example, Defendants instructed High Impact to add the lengthy segment in which the Animation caused two solid steel parts to merge into each other and occupy the same space (in a portion of the Animation obscured from viewers) in order for the Animation to depict (falsely) the striker walking vertically up off of the sear. *See* Px019. In addition, Bagnell intentionally deleted comments left on YouTube by viewers who questioned the accuracy of the Animation, leaving behind one comment that was favorable to the Animation, and once he became aware that SIG had filed this lawsuit, he deleted the Animation and took no steps to preserve any of the comments or other data regarding its viewership or comments left about it. *Compare* Px032 *with* Px033; Px134 (Bagnell Dep.) at 55:52-56:11. All of this evidence admitted at trial would support a finding of malice, although that is not required for SIG's Lanham Act claim.

## VIII. The Requested Permanent Injunction Does Not Constitute an Impermissible Prior Restraint

Finally, ample evidence presented at trial demonstrates that the Animation is commercial speech in the form of attorney advertising. *See* D.E. #176 at 25-28. The case relied upon by Defendants acknowledges that "the First Amendment offers fewer protections for commercial speech." *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-cv-04810-HSG, 2017 U.S. Dist. LEXIS 210482, at *11 (N.D. Cal. Dec. 21, 2017). In fact, false advertising receives no First Amendment protection whatsoever. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 558-59 (1980).

Defendants' reliance on *Sindi v. El-Moslimany*, 896 F.3d 1 (1st Cir. 2018) is misplaced. *Sindi* is a defamation case that does not concern commercial speech, a type of speech long held to be outside the reach of prior restraint. Decades ago, the Supreme Court made clear that the doctrine of prior restraint is not applicable in the context of commercial speech. *See Jay Norris, Inc. v. Fed. Trade Comm'n*, 598 F.2d 1244, 1252 (2d Cir. 1979); *Friedman v. Rogers*, 440 U.S. 1, 10 (1979); *Va. State Bd. of Pharmacy v. Va. Citizens Couns.*, 425 U.S. 748, 771-72 n.24 (1976); *see also Bad Frog Brewery v. N.Y. State Liquor Auth.*, No. 96-cv-1668 (FJS), 1996 U.S. Dist. LEXIS 18068, at *9 n.5 (N.D.N.Y. Dec. 5, 1996) (explaining that the "prior restraint" doctrine is not applicable in the commercial speech context). The First Circuit, in which *Sindi* was decided, has also acknowledged that "commercial speech may not be subject to prohibition against prior restraints." *In re San Juan Star Co.*, 662 F.2d 108, 115 (1st Cir. 1981) (citing *Va. State*, 425 U.S. at 771 & 772 n.24). The holding in *Sindi* does nothing to change the Supreme Court case law, repeatedly applied in other circuits, that the prohibition against prior restraints is inapplicable to commercial speech. Courts routinely issue injunctions prohibiting false advertising, trademark infringement, and the like. *Hudson Furniture, Inc. v. Mizrahi*, No. 20-

CV-4891 (PAC) (RWL), 2024 U.S. Dist. LEXIS 21939, at *41 (S.D.N.Y. Feb. 7, 2024)

("Permanent injunctions are a common form of relief in cases such as this involving

infringement of intellectual property."); *Lavatec Laundry Tech. GMBH v. Voss Laundry Sols.*,

No. 3:13-cv-00056 (SRU), 2018 U.S. Dist. LEXIS 144487, at *53 (D. Conn. Jan. 9, 2018);

*Salvatore Ferragamo S.p.A. v. Does*, No. 18-CV-12069 (JPO), 2020 U.S. Dist. LEXIS 27582, at

*1 (S.D.N.Y. Feb. 18, 2020). Further, as the court in *Sindi* emphasized, the "cardinal vice of the

injunction… [was] its failure to make any allowance for contextual variation." 896 F.3d at 33.

Unlike in *Sindi*, the proposed injunction in this Lanham Act case is narrowly tailored to

specifically prevent use of the false statements in the context of commercial advertising. For

example, the injunction does not impose any limitations on Defendants' expression of opinions

about SIG's products or their ability to present evidence or opinion testimony in other litigation.

SIG's proposed injunction is in fact "precisely fitted to the circumstances of the case." *See id*. at

34.[5]

     As SIG has made clear throughout this case, Defendants are free to represent clients in

matters against SIG—and to market their services to potential clients—but they cross a line when

they make material misrepresentations of fact about the inner workings of the P320 in their

marketing materials. SIG's narrowly tailored requested injunction does not impinge on any First

Amendment rights, as it targets false advertising, which is not entitled to First Amendment

protection. *See Alexander v. Cahill*, 598 F.3d 79, 90 (2d Cir. 2010).

---

[5] SIG's narrow requested permanent injunction has made moot many of Defendants' arguments
regarding the breadth of the injunction to be issued. *See* D.E. #175 at 34.

**CONCLUSION**

For the foregoing reasons, SIG Sauer respectfully requests that this Court find that

Defendants' Animation violates the Lanham Act and issue a permanent injunction in the form of

Plaintiff's Proposed Order, at D.E. #176 Ex. A, ordering the Bagnell defendants to permanently

refrain from publishing any version of the Animation to the public in any advertising context,

whether on the Bagnell Firm website or in any other form on any other platform, and whether on

the Internet or in any other media.

Dated: April 8, 2024

Respectfully submitted,

SIG Sauer, Inc.

By its attorneys,

*/s/ Anthony D. Mirenda*
Anthony D. Mirenda (*pro hac*)
E. Jacqueline Chavez (*pro hac*)
Caroline Holliday (*pro hac*)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone: 617-832-1000
Facsimile: 617-832-7000
adm@foleyhoag.com
jchavez@foleyhoag.com
cholliday@foleyhoag.com

James R. Smart (CT Bar ct20982)
Koch, Garg & Brown
1177 High Ridge Rd.
Stamford, CT 06905
Telephone: 203-461-1056
james@kgb-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of the foregoing was filed electronically. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: April 8, 2024

*/s/ Anthony D. Mirenda*
Anthony D. Mirenda