**SALTZ MONGELUZZI & BENDESKY**
By: Larry Bendesky, Robert W. Zimmerman,
Ryan D. Hurd and Samuel A. Haaz
Attorney IDs: 51026, 208410, 205955, 314507
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
(215) 496-8282


*Filed and Attested by the
Office of Judicial Records*
*pm*
*L. BREWINGTON*

**ATTORNEYS FOR PLAINTIFF**

| | |
|---|---|
| **MARIYA GOMELSKAYA, Individually and as Administratrix of the Estate of ROMAN NESHIN, DECEASED** 749 Bridgeview Rd. Feasterville-Trevose, PA 19053 *Plaintiff,* v. **SIG SAUER, INC.** 72 Pease Boulevard Newington, NH 03801 **GERSH GROUP, INC. d/b/a SPOT4GUNS** 1732 Bridgetown Pike Feasterville-Trevose, PA 19053 *Defendants.* | PHILADELPHIA COUNTY COURT OF COMMON PLEAS LAW DIVISION **TERM, 2024** CIVIL CASE NUMBER: **JURY TRIAL DEMANDED** |

"NOTICE

"You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

"YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

"AVISO

"Le han demandado en corte. Si usted quiere defenderse contra las demandas nombradas en las páginas siguientes, tiene veinte (20) días, a partir de recibir esta demanda y la notificación para entablar personalmente o por un abogado una comparecencia escrita y tambien para entablar con la corte en forma escrita sus defensas y objeciones a las demandas contra usted. Sea avisado que si usted no se defiende, el caso puede continuar sin usted y la corte puede incorporar un juicio contra usted sin previo aviso para conseguir el dinero demandado en el pleito o para conseguir culquier otra demanda o alivio solicitados por el demandante. Usted puede perder dinero o propiedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE ABOGADO (O NO TIENE DINERO SUFICIENTE PARA PARGAR A UN ABOGADO), VAYA EN PERSONA O LLAME POR TELEFONO LA OFICINA NOMBRADA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASSISTENCIA LEGAL.

| THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE. | ESTA OFICINA PUEDE PROPORCIONARLE LA INFORMACION SOBRE CONTRATAR A UN ABOGADO. SI USTED NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO, ESTA OFICINA PUEDE PROPORCIONARLE INFORMACION SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES A PERSONAS QUE CUMPLEN LOS REQUISITOS PARA UN HONORARIO REDUCIDO O NINGUN HONORARIO. |
|---|---|
| PHILADELPHIA BAR ASSOCIATION<br>LAWYER REFERRAL and INFORMATION SERVICE<br>One Reading Center<br>Philadelphia, Pennsylvania 19107<br>(215) 238-1701" | ASSOCIACION DE LICENDIADOS DE FILADELFIA<br>SERVICO DE REFERENCA E INFORMACION LEGAL<br>One Reading Center<br>Filadelfia, Pennsylvania 19107<br>Telefono: (215) 238-1701" |

## **COMPLAINT – CIVIL ACTION**

1.      Upon information discovered through research and document production, the Sig Sauer P320 is the most dangerous pistol sold in the United States.

2.      In as early as 2016, Sig Sauer assessed the risks of the Sig Sauer's P320 design, and specifically identified multiple unintentional discharge risks.

3.      Sig Sauer knew, as early as 2016 and possibly earlier, that unintended discharges caused by unintended trigger actuation was a known risk of the P320's design, as testified to by Matt Taylor, one of the P320's chief designers.

4.      Sig Sauer also knew that unintended trigger actuation by a foreign object coming into contact with the P320 trigger could result in an unintended discharge causing death.

5.      Sig Sauer also knew that holstering and unholstering a pistol without any external safeties and with a trigger length less than one-quarter of an inch could result in an unintended discharge.

6.      Sig Sauer knew that the risks of the P320s design could result in the death of its users.

7.      Horrifically for Mr. Neshin, his wife Mariya, and their five-year-old daughter, D.N., Sig Sauer's own risk analysis of its defectively designed P320 was proven right.

Case ID: 241200470

8. At the time Sig Sauer knew or should have known it was the first gunmaker- ever- to offer this type of pistol without any external safety.

9. Plaintiff's decedent, Roman Neshin, was a trained and experienced firearms user who was killed by his unreasonably dangerous and defectively designed Sig Sauer P320.

10. Mr. Neshin is one of well over a hundred individuals, including federal law enforcement agents, police officers, combat veterans, firearms instructors, and other civilians, who diligently dedicated significant portions of their lives to the safe use and handling of weapons, but who were shot and injured due to the defective nature of the P320.

11. Mr. Neshin died after unimaginable pain and suffering resulting from his Sig Sauer P320 unexpectedly discharging a bullet into his groin.

12. Upon information and belief, Mr. Neshin trusted Sig Sauer to live up to its widely advertised and marketed reputation as a designer and manufacturer of safe and reliable handguns.

13. Upon information and belief, Mr. Neshin trusted Sig Sauer to live up to its promise that the P320 "would not fire unless you want it to."

14. Upon information and belief, Mr. Neshin put his trust in Sig Sauer to provide a reasonably safe firearm.

15. Like many others, Mr. Neshin was lied to by Sig Sauer, and he paid the ultimate price for Sig Sauer's lies and its defectively designed P320.

16. Plaintiff seeks damages, including compensatory and punitive damages, for the death of Mr. Neshin, a young husband and father.

## PARTIES

17. Plaintiff, Mariya Gomelskaya, ("Plaintiff"), is an adult individual, citizen, and resident of the State of Pennsylvania residing at the above-captioned address.

Case ID: 241200470

18.     At all relevant times, Ms. Gomelskaya was Roman Neshin's wife and is now the administratrix of his estate. See Exhibit A.

19.     Mr. Neshin is also survived by his and Ms. Gomelskaya's minor daughter.

20.     Defendant, Sig Sauer, Inc. ("Sig Sauer" or "Sig Sauer") is a corporation or other business entity with its principal place of business at 72 Pease Boulevard in Newington, New Hampshire 03801, organized and incorporated under the laws of Delaware.

21.     Defendant, Gersh Group, Inc., d/b/a Spot4Guns ("Spot4Guns") is a licensed gun broker and dealer by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) with Federal Firearms License (FFL) number 8-23-017-01-3K-13365 with a principal business address located at 1732 Bridgetown Pike, Feasterville, PA 19053.

**JURISDICTION AND VENUE**

22.     The Court has jurisdiction over this matter as Plaintiff and Defendant Spot4Guns are Pennsylvania residents, and the shooting incident and death of Roman Neshin occurred in Pennsylvania.

23.     Venue is proper in Philadelphia County because Defendants regularly conduct business there, pursuant to Rule 2179(a).

24.     Spot4Guns markets its products, sells its products and provides services to consumers in Philadelphia County specifically, and derives a significant portion of its business from sales to Philadelphia residents.

25.     Spot4Guns website specifically targets Philadelphia consumers and 1) states that "We are proud to serve the Bucks County **- Philadelphia -** Montgomery and surrounding counties with our gunsmithing services", 2) includes Philadelphia as a region that Spot4Guns

Case ID: 241200470

services, and 3) provides a link to assist Philadelphia residents obtain a license to carry a firearm in Philadelphia specifically.

26. Defendant Sig Sauer routinely sells and distributes products, including Sig Sauer P320s, into Philadelphia County.

## **GENERAL ALLEGATIONS**

27. Sig Sauer designs and manufactures firearms for sale to law enforcement, military and commercial markets throughout the United States and internationally and markets and sells its products directly and through dealers.

28. Sig Sauer was formerly known as SIG SAUERARMS Inc. and changed its name to Sig Sauer, Inc. in October 2007. Its Chief Executive Officer at all times relevant to this Complaint was Ron J. Cohen.

29. The Sig Sauer P320 is susceptible to unintended discharges, meaning instances when a gun fires without user intent, at an alarmingly high rate.

30. There have been over 150 incidents (and likely many, many more) of the Sig Sauer P320s unintentionally discharging. Many of these unintended discharges have caused severe injury to the users and/or bystanders.

31. The vast majority of these users are law enforcement officers, former military personnel, and/or highly trained and practiced gun owners.

32. At all relevant times, Defendants were acting by and through their employees, servants, and agents, acting within the course and scope of their employment, service and agency.

33. This action seeks actual, compensatory, and punitive damages, and equitable relief, relating to Defendant, Sig Sauer Inc.'s negligence, defective design, and unfair and deceptive

Case ID: 241200470

marketing practices regarding the P320, as well as Spot4Gun's distribution of the pistol to decedent.

34.     In its "Safety Without Compromise" marketing materials for the P320, Sig Sauer promises:



SAFETY WITHOUT COMPROMISE

We've designed safety elements into every necessary feature on this pistol. From the trigger, to the striker and even the magazine, the P320 won't fire unless you want it to.

35.     Despite this express representation, which Sig Sauer made for years, the weapon lacks industry-standard safety features and has fired unintentionally many, many times.

36.     Defendant, Sig Sauer, had knowledge long before the sales of the P320s used by Plaintiffs that the P320 - its first ever striker-fired pistol - was capable of firing unintentionally due to defective components and/or the lack of necessary safety features, including but not limited to: a manual safety, a tabbed trigger safety, a de-cocker and/or a grip safety.

37.     For years since the weapon was first introduced to the market in 2014 and since Sig Sauer became aware of the risks of the P320's design, Sig Sauer has wantonly failed to recall the P320 despite knowing of scores of grievous wounds inflicted upon users and bystanders.

38.     For years before the October 1, 2024 incident giving rise to this action, Sig Sauer expressly represented that the weapon will not fire unless the user wants it to: "[w]e've designed safety elements into every necessary feature on this pistol.  From the trigger, to the striker and even the magazine, the P320 won't fire unless you want it to":

Case ID: 241200470



39. Many U.S. law enforcement agencies, local police departments, military personnel at a commander's discretion, and private owners routinely carry pistols with a chambered round.

40. Sig Sauer knew many of its customers carry Sig Sauer P320s with a chambered round.

41. Sig Sauer advertises that users can carry the P320 with a round chambered by annotating the P320's capacity in various configurations such as "10 + 1," and "12 + 1."

42. The "+ 1" represents a chambered round.

43. When Sig Sauer designed and manufactured all its pistols, including the P320, Sig Sauer knew that law enforcement personnel, military personnel and private owners routinely carry pistols with a chambered round.

44. The P320 is the first striker-fired pistol[1] Sig Sauer has ever manufactured.

---

[1] A striker-fired pistol is different from the traditional "hammer-fired" pistol. It contains no external hammer to be pulled back by the user; rather, it has an internal "striker" that is held back under spring pressure inside the gun, like a bow and arrow. The P320 is designed so that the rearward movement of the slide places the striker under significant spring tension, making it ready to fire once it is released. The striker is held back by the weapon's sear.

Case ID: 241200470

45. Sig Sauer assembled the P320 using the same frame from an earlier hammer-fired Sig Sauer model, the P250.

46. While competing for a $580 million contract to supply the United States Army with a new service pistol in 2016, Sig Sauer's prototype P320s exhibited nearly 200 malfunctions during Army testing. The Army demanded that Sig Sauer fix all problems associated with the prototype.

47. The United States Army only agreed to the purchase of the P320 after Sig Sauer committed to designing an external manual safety for every military gun sold.

48. The Sig Sauer military bid came in significantly below that of the other final bidder: Glock.

49. Upon information and belief, the P320 sub-model purchased by Roman Neshin was not offered by Sig Sauer with a manual safety, *or any external safety,* as an option.

50. An external manual safety, at the time the subject gun was sold, was technologically feasible for the P320 to include on the pistol.

51. A tabbed trigger safety, at the time the subject gun was sold, was technologically feasible for the P320 to include on the pistol.

52. A properly functioning and active external manual safety, at the time the subject gun was sold, would preclude a properly functioning P320 from firing in an unintended fashion.

53. Upon information and belief, every pre-cocked striker-fired pistol on the market except the those sold by Sig Sauer is equipped with some type of external safety.

54. Since the P320's manufacture and distribution into the stream of commerce, Sig Sauer has expressly represented that the weapon possessed a "robust safety system":

Case ID: 241200470



55.　　Indeed, Sig Sauer originally manufactured the P320 to include a tabbed trigger safety for the P320.

56.　　Despite their representations, Sig Sauer never made a tabbed trigger safety available as an option for the P320.

57.　　Sig Sauer's original design and manufacture of the P320 rendered the weapon unreasonably dangerous for its intended uses and for any foreseeable uses, including normal carrying, holstering, un-holstering, and/or handling.

58.　　When Sig Sauer shipped P320s to dealers for sale to civilian consumers, Sig Sauer knew or should have known; a.) that the weapon was defective in its design and unreasonably dangerous for its ordinary uses, intended uses, and other foreseeable uses; and b.) that un-commanded discharges could and would occur in the ordinary course of using the weapon.

59.　　The death of Roman Neshin, and harm caused to many others, were the foreseeable result of Sig Sauer's own failure modes and effects criticality analysis ("FMECA") performed by Sing Sauer for both its internal use and analysis, and its FMECA analysis provided to the United States Military in or around 2016.

Case ID: 241200470

60.     In 2016 or 2017, the United State Military required that Sig Saur conduct a failure modes effects and criticality analysis.

61.     The purpose of the FMECA was to assess the vulnerabilities of the P320 to certain health and safety risks associated with the use of the P320.

62.     Based on its own analysis, Sig Sauer was on notice of the risks unique to the P320 design.

63.     The FMECA identified risks associated with the use of the P320 including unintended discharges.

64.     One of those unintentional discharge risks was the unintended trigger actuation by a foreign object.

65.     Another of the unintentional discharge risks was the gun would unintentionally fire while holstering and/or unholstering.

66.     The risk of unintended trigger actuation was that it could kill someone.

67.     In 2016 Sig Sauer was aware of incidents in which the P320 discharged in its holster due to unintended trigger actuation—a known risk from the FMECA analysis—which continued through 2024 when Roman Neshin was killed.

68.     At no time did Sig Sauer require that each P320 include at least one external safety like its competitors who make this type of pistol.

69.     Indeed, it continued to sell P320's with no external safeties to consumers, like Roman Neshin, even when Sig Sauer knew of the unreasonable risks and danger associated with unintended discharges due to the P320's design.

70.     The undersigned attorneys have filed numerous lawsuits identifying many of the Sig Sauer P320 unintended discharge incidents that Sig Sauer was aware of for years.

Case ID: 241200470

71.     These and other incidents include several that were captured on video, clearly depicting the P320 discharging, while in its holster, without the user's hands anywhere near the gun.

72.     A compilation of some of the obtained videos of P320s discharging without the user pulling the trigger are available for viewing here.[2]

73.     On July 24, 2022, Officer Daniel Witts, of the Montville, Connecticut Police Department, experienced his P320 discharging while secured in its holster as he was bent over with his arms wrapped around a suspect's leg and nowhere near his gun.  A still image of the discharge can be seen below.



*Officer Daniel Witts, Montville, CT*
*P320 discharging in its holster*

---

[2] https://youtu.be/QeIARI9SpdY

Case ID: 241200470

74.     On March 28, 2022, Officer Marvin Reyes, of the Houston Police Department, also experienced his P320 discharging while secured in its holster when he was reaching into his truck with arms extended and his hands nowhere near the gun. The muzzle flash from the discharge he experienced can be seen below.



***Officer Marvin Reyes, Houston, TX***
***P320 discharging in its holster***

75.     On May 4, 2022, Detective David Cole of the Somerset County, Maine, Sheriff's Department was walking to his truck after serving a search warrant when his P320 that was secured in its holster discharged into his right leg.

Case ID: 241200470



***Officer David Cole, Piscataquis, ME***
***P320 discharging in its holster***

76.      On May 9, 2024, Officer Kevin Currington of the LaGrange, Texas Police Department nearly bled to death when his P320 that was secured in its holster discharged into his leg.



***Officer Kevin Currington, LaGrange, TX***
***P320 discharging in its holster***

77.      Tragically, Sig Sauer P320 unintentional discharges continue at an alarming rate putting its users at risk of death or serious bodily injury by performing everyday tasks.

Case ID: 241200470

78.     Upon information and belief, Sig Sauer knew prior to Mr. Neshin's fatal incident of another unintentional discharge of a Sig Sauer P320 killing an individual.

79.     To date, Sig Sauer has never issued a mandatory recall of the P320 and continues to sell the P320.

80.     Sig Sauer's corporate conduct including design, manufacturing and marketing decisions prioritized profits over the health and safety of its users and those in the vicinity of the P320.

## PLAINTIFF'S INCIDENT

81.     Prior to October 1, 2024 Roman Neshin had extensive firearms experience as a gun owner.

82.     On or around February 22, 2022, Mr. Neshin purchased the P320 and had the P320 shipped to a federally licensed gun dealer, Spot4Guns located at 1732 Bridgetown Pike, Feasterville, PA 19053.

83.     Spot4Guns completed the gun transfer and sale of the defectively designed P320 to Roman Neshin and received compensation for its services.

84.     October 1, 2024 was a Tuesday, and Roman's wife, Mariya, traveled to New York City for work that morning.

85.     Mr. Neshin dropped off his daughter at school that morning and returned home to begin his workday as a self-employed business owner of Smart Home Solutions.

86.     The morning of October 1, 2024, was the last time Roman Neshin's five-year-old daughter would see her dad alive.

87.     After dropping off his daughter, Mr. Neshin returned to his home at 749 Bridgeview Rd.

Case ID: 241200470

88.     Upon information and belief, Mr. Neshin's P320, which was in its inside-the-waistband holster, unintendedly and unexpectedly discharged.

89.     The bullet pierced his right groin.

90.     Mr. Neshin began to bleed profusely.

91.     Frantically, Mr. Neshin tried to save his own life by attempting to retrieve and apply a tourniquet to stop the bleeding.

92.     Mr. Neshin struggled and fought to get help while attempting to stop the bleeding.

93.     As he struggled to survive, Mr. Neshin's bloody hands rubbed against colorful artwork by his daughter that decorated his office wall.



Blood-soaked drawings in Mr. Neshin's basement

94.     After significant blood loss, pain, and suffering, Mr. Neshin - just forty-one years old – died from the single unintended gunshot wound from his Sig Sauer P320.

95.     After the incident, Mariya had attempted to call Roman several times from New York City without his picking up the phone.

Case ID: 241200470

96.     After not hearing from him for several hours, Mariya called her neighbor to see if he was home.  The neighbor confirmed that Roman's car was still in the driveway.

97.     Roman Neshin was ultimately found dead, in his basement office, with a single gunshot wound to his right groin.

98.     Upon information and belief, plastic shrapnel from the holster was found at the scene inside Mr. Neshin's pants.

99.     As a direct and proximate result of Defendant Sig Sauer and Defendant Spot4Guns' wrongful acts, negligence, gross negligence, carelessness, recklessness, conscious disregard, deliberate indifference, strict liability and/or other liability producing conduct, Roman Neshin suffered unimaginable physical pain and psychological trauma in his final minutes, knowing he was losing blood and dying alone, and that he would never see his wife or daughter again.

100.     As a direct and proximate result of Defendant Sig Sauer and Defendant Spot4Guns wrongful acts, negligence, carelessness, recklessness, conscious disregard, deliberate indifference, strict liability and/or other liability producing conduct, Mariya Gomelskaya and her daughter have suffered and continues to suffer unimaginable, disabling, and permanent psychological trauma, injuries and emotional distress, the full extent of which has yet to be determined.  Mariya and her daughter have in the past and may in the future continue to be compelled to expend monies and incur further obligations for such medical and/or psychological care and treatment. Mariya Gomelskaya and her daughter have in the past and may in the future continue to suffer agonizing loss, psychological pain and suffering, and extraordinary emotional harm.

Case ID: 241200470

## COUNT I – NEGLIGENCE
## PLAINTIFF V. SIG SAUER

101.    Plaintiff re-adopts and re-alleges all paragraphs of this pleading as if fully set forth herein.

102.    At all relevant times, Sig Sauer owed Plaintiff the duty to design the P320 weapon in such a manner and with the exercise of reasonable care, so as to prevent it from firing without a user intending it to, before selling the gun and placing it into the stream of commerce.

103.    At all relevant times, Sig Sauer owed Plaintiff the duty to manufacture, assemble, inspect and/or test its P320s in such a manner and with the exercise of reasonable care, so as to prevent it from firing without the user wanting it to, before selling the gun and placing it into the stream of commerce.

104.    At all relevant times, Sig Sauer owed a duty to Plaintiff to unambiguously warn consumers and/or intended users of the P320, including Roman Neshin, of known or suspected hazards that rendered the gun unreasonably dangerous to handle or use.

105.    Sig Sauer knew or had reason to know that the P320 posed an unreasonable risk of harm by virtue of its own internal research and testing, including its failure modes and effects criticality analysis ("FMECA").

106.    Sig Sauer also knew or had reason to know that the P320 posed an unreasonable risk of harm by virtue of formal and informal reports and video evidence from civilian, law enforcement and military users, and formal claims and lawsuits arising from substantially similar incidents, internal testing and research, industry publications and research, and other sources of information to be developed in discovery.

107.    Sig Sauer breached the above-cited duties in various ways, including but not limited to, one or more of the following negligent acts:

Case ID: 241200470

i.      By failing to use due care in designing and manufacturing the P320's firing and striker assembly to prevent un-commanded discharges;

ii.     By failing to use due care in designing the P320, failing to incorporate an external safety to prevent unintended discharges;

iii.    By failing to use due care in designing and manufacturing the P320's internal components to prevent un-commanded discharges;

iv.     By failing to issue a mandatory recall of the P320;

v.      By failing to make reasonable tests and/or inspections to discover the defective, hazardous and unreasonably dangerous conditions relating to the gun's propensity to discharge un-commanded as described above;

vi.     By negligently failing to unambiguously warn purchasers and end users of the gun, including Plaintiff's Decedent, of said defective, hazardous and unreasonably dangerous conditions relating to its design and manufacture, about which it knew or should have known through the exercise of ordinary care;

vii.    By failing to discover the defective, hazardous and unreasonably dangerous conditions relating to the gun's propensity to discharge un-commanded while in the possession of SIG SAUER, and during which times employees, servants or agents of SIG SAUER had an opportunity to inspect, service and work on the gun;

viii.   By misrepresenting the dangers and hazards posed by the gun;

ix.     By failing to design a firearm that would be safe for all users to operate under ordinary circumstances;

x.      By failing to incorporate necessary information, warnings, and instructions within the P320 manual;

xi.     By negligently misrepresenting that the P320 is safe when carried with a round in the chamber;

Case ID: 241200470

xii.    By failing to incorporate safeties which were standard among all of the P320s' competitors; and

xiii.    Other negligent acts and omissions to be developed in the course of discovery.

108.    Sig Sauer knew, or should have known, that exposing users to the dangerous and defective and hazardous conditions existing in the gun would or could give rise to serious bodily injuries to such users, up to and including death.

109.    The gun's defective condition was not visible, and Roman Neshin was not capable of realizing the dangerous condition and could not have discovered the dangerous condition even upon performing a reasonable inspection of the same.

110.    Sig Sauer's negligence, as alleged in this Count, directly and proximately caused the October 1, 2024, unintended discharge and Mr. Neshin's death.

111.    As a direct and proximate result of the negligence set forth in this Count, Mr. Neshin suffered severe physical injury, mental anguish, loss of his life, physical deformity and handicap and embarrassment associated with the same, loss of earnings and earning capacity. Plaintiff has further incurred emergency medical expenses, funeral expenses, and other expenses associated with Mr. Neshin's death. Plaintiff and decedent's beneficiaries will suffer such losses and impairments in the future.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Sig Sauer, in excess of the jurisdictional minimums, in compensatory damages, punitive or exemplary damages, delay damages pursuant to Pa.R.Civ.P. 238, interest and allowable costs of suit and bring this action to recover same.

### COUNT II - STRICT PRODUCT LIABILITY
### PLAINTIFF V. SIG SAUER

Case ID: 241200470

112.    Plaintiff re-adopts and re-allege all paragraphs of this pleading as if fully set forth herein.

113.    Sig Sauer, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and/or distributors, is strictly liable under §402(A) of the Restatement (Second) of Torts because:

  a.  Sig Sauer is engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing, and/or placing into the stream of commerce firearms, including the P320 that injured Plaintiff;

  b.  The product involved in the subject incident was marketed and/or placed in the general stream of commerce by Sig Sauer;

  c.  The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed and/or placed into the stream of commerce;

  d.  The product was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce in the defective condition for the reasons set forth above.

114.    The P320 was in a defective condition, as a reasonable person would conclude that the probability and seriousness of the harm caused by the P320 outweighed the burden or costs of taking precautions.

115.    Sig Sauer breached its duties, by and through their agents, servants, workers and/or employees, and was jointly and severally careless, negligent, grossly negligent and/or reckless in the performance of its obligations.

116.    The defective condition of the P320 caused Plaintiffs' injuries.

117.    Sig Sauer is therefore strictly liable to Plaintiffs.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Sig Sauer, in excess of the jurisdictional minimums, in compensatory damages, punitive or exemplary damages, delay

Case ID: 241200470

damages pursuant to Pa.R.Civ.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT III - NEGLIGENCE
## PLAINTIFF V. SPOT4GUNS

118.    Plaintiff re-adopts and re-alleges all paragraphs of this pleading as if fully set forth herein.

119.    At all relevant times, Defendant owed a duty to distribute a product with the exercise of reasonable care, with the necessary information provided with the product.

120.    Defendant breached the above-cited duties in various ways, including but not limited to, one or more of the following negligent acts:

    i.      By failing to use due care in distributing the P320;

    ii.     By failing to make reasonable tests and/or inspections to discover the defective, hazardous and unreasonably dangerous conditions relating to the gun's propensity to discharge un-commanded as described above;

    iii.    By negligently failing to unambiguously warn purchasers and end users of the gun, including Plaintiff's Decedent, of said defective, hazardous and unreasonably dangerous conditions relating to its design and manufacture, about which it knew or should have known through the exercise of ordinary care;

    iv.     By failing to discover the defective, hazardous and unreasonably dangerous conditions relating to the gun's propensity to discharge un-commanded;

    v.      By misrepresenting the dangers and hazards posed by the gun; and

    vi.     Other negligent acts and omissions to be developed in the course of discovery.

Case ID: 241200470

121. Defendant knew, or should have known, that exposing users to the dangerous and defective and hazardous conditions existing in the gun would or could give rise to serious bodily injuries to such users, up to and including death.

122. Defendant's negligence, as alleged in this Count, directly and proximately caused the October 1, 2024, unintended discharge and Mr. Neshin's death.

123. As a direct and proximate result of the negligence set forth in this Count, Mr. Neshin suffered severe physical injury, mental anguish, loss of his life, physical deformity and handicap and embarrassment associated with the same, loss of earnings and earning capacity. Plaintiff has further incurred emergency medical expenses, funeral expenses, and other expenses associated with Mr. Neshin's death. Plaintiff and decedent's beneficiaries will suffer such losses

**WHEREFORE**, Plaintiff demands judgment against Defendant in excess of the jurisdictional minimums, in compensatory damages, punitive or exemplary damages, delay damages pursuant to Pa.R.Civ.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT IV - STRICT PRODUCT LIABILITY
### PLAINTIFF V. SPOT4GUNS

124. Plaintiff re-adopts and re-alleges all paragraphs of this pleading as if fully set forth herein.

125. Spot4Guns, by and through its agents, servants, workers, sellers, suppliers and/or distributors, is strictly liable under §402(A) of the Restatement (Second) of Torts because:

    a. Plaintiffs were harmed by the defectively designed P320 which was placed into the stream of commerce, sold to and/or distributed to Roman Neshin by Defendant Spot4Guns;

Case ID: 241200470

b. Spot4Guns is engaged in the regular business of selling, supplying, distributing, and/or placing into the stream of commerce firearms, including the P320 that injured Plaintiff;

c. The product was expected to and did reach Roman Neshin without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed and/or placed into the stream of commerce;

d. The product was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce in the defective condition for the reasons set forth above.

e. Spot4Guns knew, or should have known, that the P320 was defectively designed and unreasonably dangerous due to the absences of any external safety devices and the countless published reports of the P320 causing harm to its users by the gun discharging without the user wanting it to.

126.    The P320 was in a defective condition, as a reasonable person would conclude that the probability and seriousness of the harm caused by the P320 outweighed the burden or costs of taking precautions.

127.    Spot4Guns breached its duties, by and through its agents, servants, workers and/or employees, and was jointly and severally responsible for its wrongful acts in the performance of its obligations.

128.    The defective condition of the P320 caused Plaintiffs' injuries.

129.    Spot4Guns is therefore strictly liable to Plaintiffs.

**WHEREFORE**, Plaintiff demands judgment against Defendant in excess of the jurisdictional minimums, in compensatory damages, punitive or exemplary damages, delay damages pursuant to Pa.R.Civ.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT V – WRONGFUL DEATH
## MARIYA GOMELSKAYA, INDIVIDUALLY AND ON BEHALF OF ALL BENEFICIARIES v. ALL DEFENDANTS

Case ID: 241200470

130.     Plaintiff re-adopts and re-alleges all paragraphs of this pleading as if fully set forth herein.

131.     Plaintiff, Mariya Gomelskaya, brings this action as the personal representative of Roman Neshin, and also brings this action on behalf of those entitled by law to recover for his wrongful death, pursuant to the Wrongful Death Act, 42 Pa. C.S.A. § 8301, and claim all damages recoverable under the Pennsylvania Wrongful Death Act.

132.     The names of all persons who may be entitled to recover damages, as well as their relationship to decedent, are as follows:

     a.   Mariya Gomelskaya (spouse),

     b.   D.N. a minor (daughter).

133.     As a direct and proximate result of all Defendants' wrongful acts, negligence, carelessness, gross negligence and reckless conduct as set forth above, which is incorporated herein, Roman Neshin's Wrongful Death beneficiaries have been caused to incur and pay various expenses for emergency services, medical treatment, hospital care, custodial care, and funeral and other expenses related to his death.

134.     As a direct and proximate result of the foregoing, Roman Neshin's Wrongful Death beneficiaries have been, continue to be, and will in the future be deprived of his counsel, services, companionship, society, support, and protection to his beneficiaries and their profound emotional and psychological loss due to the death of Roman.

     **WHEREFORE**, Plaintiff demands judgment against Defendant in excess of the jurisdictional minimums, in compensatory damages, punitive or exemplary damages, delay damages pursuant to Pa.R.Civ.P. 238, interest and allowable costs of suit and bring this action to recover same.

Case ID: 241200470

## COUNT VI – SURVIVAL ACTION
## MARIYA GOMELSKAYA, AS THE ADMINISTRATRIX OF THE ESTATE OF
## ROMAN NESHIN V. ALL DEFENDANTS

135.    All preceding paragraphs of this complaint are incorporated here by preference.

136.    Plaintiff, Mariya Gomelskaya, Individually and as the Administratrix of the Estate of Roman Neshin, also brings this action on behalf of the Estate of Roman Neshin, deceased, by virtue of the Survival Act, 42 Pa.C.S.A. § 8302, and claim all benefits of the Survival Act on behalf of Roman Neshin's Estate and other persons entitled to recover under law.

137.    As a direct and proximate result of all Defendants' wrongful acts, negligence, carelessness, and reckless conduct as set forth above, which is incorporated herein, Plaintiff claims on behalf of the Estate Roman Neshin, all damages suffered by the Estate by reason of the death of Roman Neshin, including without limit the generality of the following: the severe injuries to Roman Neshin, which resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Roman Neshin suffered prior to his death, from the date of his death until the time in the future he would have lived had he not died as a result of the injuries he sustained; expenses for medical care; the loss and total limitation and deprivation of his normal activities until the time of his death.

**WHEREFORE**, Plaintiff demands judgment against Defendant in excess of the jurisdictional minimums, in compensatory damages, punitive or exemplary damages, delay damages pursuant to Pa.R.Civ.P. 238, interest and allowable costs of suit and bring this action to recover same.

Respectfully submitted,

**SALTZ MONGELUZZI & BENDESKY P.C.**

Date:  December 3, 2024              By:    _/s/ Robert W. Zimmerman_
                                    LARRY BENDESKY, PA Bar # 51026

Case ID: 241200470

ROBERT W. ZIMMERMAN, PA Bar #208410
RYAN D. HURD, PA Bar #205955
SAMUEL A. HAAZ, PA Bar #314507
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
(215) 496-8282
lbendesky@smbb.com
rzimmerman@smbb.com
rhurd@smbb.com
shaaz@smbb.com

Case ID: 241200470

## **VERIFICATION**

I, <u>Mariya Gomelskaya, Individually and as Administrator of the Estate of Roman Neshin</u>, hereby verify that I am the Plaintiff in the foregoing action and that the forgoing document is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language used is that of counsel and not my own. I have read the document and, to the extent it is based upon the information I have given counsel, the facts contained therein are true and correct to the best of my knowledge, information, and belief. I make this Verification with full knowledge and understanding that false statements made herein are subject to the penalties of perjury.

_____          Dated: <u>December 3, 2024</u>
MARIYA GOMELSKAYA

# EXHIBIT A

Case ID: 241200470



# LINDA BOBRIN, ESQUIRE

### Register of Wills and Clerk of the Orphans' Court

Bucks County Courthouse, 55 E. Court Street, Doylestown, PA 18901

Douglas Wayne, Esquire, First Deputy
Colleen F. Strunk, Second Deputy
Melissa V. Bond, Solicitor

Email: eprobate@buckscounty.org
Telephone: (215)348-6265
(888)942-8257

## SHORT CERTIFICATE

**Commonwealth of Pennsylvania** :

                    ss

**County of Bucks** :

    I, **Linda Bobrin, Esquire**, Register of Wills in and for the County of Bucks, in the Commonwealth of Pennsylvania, DO HEREBY CERTIFY that on the **17th day of October, 2024**, **LETTERS OF ADMINISTRATION** for the Estate of **ROMAN NESHIN**, deceased, were granted to **MARIYA GOMELSKAYA,** Personal Representative, having first been qualified well and truly to administer the same. And, I further certify that no revocation of said Letters appears of record in my office.

Date of Death: October 01,2024

Social Security No.: XXX-XX-0208

File No.: 2024-03368

Given under my hand and seal of office this
17th day of October, 2024

_Linda Bobrin_

Linda Bobrin, Esquire
REGISTER OF WILLS

**NOT VALID WITHOUT SIGNATURE AND IMPRESSED SEAL**

Case ID: 241200470