UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SIG SAUER, INC., | : | Case No. 3:22-cv-00885 (VAB) |
| | : | |
| *Plaintiff,* | : | |
| v. | : | |
| JEFFREY S. BAGNELL, ESQ., LLC, | : | |
| and JEFFREY S. BAGNELL, | : | |
| *Defendants.* | : | March 23, 2026 |

## <u>AMENDED MOTION FOR RECONSIDERATION</u>

Pursuant to Local Rule 7(c) and Federal Rules of Civil Procedure 59(e) and 63, Defendants respectfully move this Court to reconsider its Ruling and Order on Motion for a Permanent Injunction (Doc. 227). Reconsideration is warranted to correct manifest errors of fact and law, to remedy a structural procedural failure under Federal Rule of Civil Procedure, and to reconcile the Court's findings with the trial evidence.

### I.     Legal Standard

Reconsideration is appropriate where the moving party identifies "controlling decisions or data that the court overlooked matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The recognized grounds include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). As set forth below, clear error and manifest injustice are both present here.

### II.    The Court lacked procedural authority to make credibility findings on a cold record from a trial that occurred two years ago.

Rule 63 imposes a mandatory threshold certification requirement before a successor judge may act: the judge "must certify familiarity with the record" and "may recall any witness." Fed. R.

Civ. P. 63. *See* Fed. R. Civ. P. 63 advisory committee's note to 1991 amendment ("[t]he successor judge is . . . not free to disregard the prior proceedings"). The docket in this matter contains no such certification.

The Court's Order resolves a credibility dispute.  It concludes that Bagnell acted with "bad faith" and "knowing" disregard for the truth. Those are quintessential credibility determinations that a successor judge may not make on a cold record under Rule 63.  The absence of a Rule 63 certification, combined with the nature of the findings, constitutes structural procedural error  requiring vacatur.

**III.    The Court overlooked Sig Sauer's own admissions which defeat the "literally false findings.**

The Court's finding that the Animation was literally false (Doc. 227 at 12) is irreconcilable with Sig Sauer's own trial exhibits, which the Ruling does not address:

**1.    Sig Sauer's Patent Admission (Hearing Ex. 5):**  Sig Sauer's own patent documentation explicitly states that a mechanical "impulse" can dislodge the striker from the sear, necessitating a secondary engagement surface to "arrest forward movement." The Animation depicted exactly this mechanical sequence. A visual depiction of a mechanism that Sig Sauer's own engineers patented as a known failure mode cannot be "literally false":

H (US):

ing, NH

ter. NH

ert

): Eric

, NH

chester.

Thomas

S):

(S)

I (US)

m of this

under 35

(56)                 **References Cited**

U.S. PATENT DOCUMENTS

810.177  A  *   1 1906  De Kiraly ............. F41A 19 10
                                                      42 69.01
1.827.037  A  *  10 1931  Pedersen .................. F41A 3 26
                                                      89 154

(Continued)

FOREIGN PATENT DOCUMENTS

GB          2092279     *  12 1981   ............. F41A 17 72

*Primary Examiner* — Derrick R Morgan
(74) *Attorney, Agent, or Firm* — Finch & Maloney PLLC

(57)                     **ABSTRACT**

A handgun sear has a sear body extending between a proximal end portion to a distal end portion. The sear defines a first engagement surface adjacent the proximal end portion and a second engagement surface positioned distally of the first engagement surface. The sear can pivot about the distal end portion between a cocked position and a displaced position. The second engagement surface can be used to arrest forward movement of the striker in the event of an impulse that causes the striker to disengage from the first engagement surface. The sear may be incorporated into a fire control assembly of a semiautomatic handgun or other firearm.

d on Oct.

/577,975.

**20 Claims, 3 Drawing Sheets**



The P320 cannot fire if the striker foot cannot dislodge from the sear face, with or without a trigger pull, as the Animation portrays.  There is no third way the gun can fire.  The Court's adoption of the claim that it is impossible for the p320 to fire as the Animation portrays, if taken as true, would mean that the P320 cannot fire at all.

2.    **Sig Sauer's Public Warnings (Hearing Ex. 2):**  In August 2017, Sig Sauer publicly admitted that "vibration" or "shock" could cause the P320 striker system to fail. This is direct corroboration of the mechanical theory depicted in the Animation.

By crediting the post-hoc testimony of Sig Sauer's litigation experts over Sig Sauer's own sworn patent filings and public admissions, the Court committed the precise error identified in *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016):  resolving a factual dispute without accounting for the proponent's own contrary admissions in the record.

**IV.    The court's willfulness finding rests on three independent factual errors that are directly contradicted by the trial record.**

The entire willfulness finding in the Order flows from a single passage at page 8: that Mr. Bagnell "witnessed the Q-Tip cleanse" and therefore "knew that the image was a distorted portrayal of the striker foot" when he provided it to High Impact. (Doc. 227 at 8.)  This conclusion rests on three factual premises, each of which is unsupported by or directly contradicted by the record.

**A.    *The Court's Finding That Mr. Bagnell "Witnessed" the Q-Tip Swab Is Unsupported by the record.***

The Court states that "Mr. Bagnell and Mr. Villani both witnessed the Q-Tip cleanse." (Doc. 227 at 8, citing Trial Tr. 85:18–86:24.)  This finding is not supported by the cited testimony. Bagnell was present at a large-scale inspection of multiple P320 firearms conducted across a large room in 2021. He did not observe the Q-tip swab being performed on this particular component.

No one directed his attention to it. "Present at an inspection" and "witnessed a specific swab on a specific component" are not the same thing, and the record does not support the latter inference.

Critically, the Q-tip swab and its alleged significance were not raised contemporaneously by anyone. The issue surfaced for the first time years later, introduced by Sig Sauer as a litigation argument. The Court's inference that Bagnell must have observed and understood the significance of that swab at the moment it occurred is speculation, incorrect, not record evidence, and cannot support a finding of "knowing" distortion.

### B.    The Court mischaracterizes Bagnell's trial testimony and ignores the white line accounting for what Sig's expert calleed "apparent" grease.

The Court characterizes Bagnell's trial testimony as a "concession" that he "knew" the image was a distortion at the time he provided it to High Impact. (Doc. 227 at 8, citing Trial Tr. 86:25–87:16.)  That is not what the testimony establishes in any way.  Bagnell acknowledged at trial in 2024 - - after years of expert discovery and litigation - - that a portion of the surface appearance in the photograph was apparently attributable to grease buildup. This is a *2024* litigation acknowledgment, not evidence of knowledge in 2021 when the animation was being created.

More fundamentally, the Court's analysis omits a fact dispositive of the willfulness finding: High Impact had already independently identified the visually anomalous material in the photograph and addressed it in the Animation by adding a white line to demarcate that material from the underlying metal surface. High Impact made this design decision precisely because the grease buildup appeared visually distinct from the raised metal of the component. Far from knowingly directing the creation of a false depiction, the Animation affirmatively *flagged the visual distinction between the anomalous surface material* and the underlying component. That is not the conduct of a party who knew the image showed only grease and concealed it. It is the conduct of a party acting in good faith on genuinely ambiguous visual information.

5

The Court's willfulness finding thus requires the simultaneous acceptance of two irreconcilable propositions: (1) that Bagnell knew in 2021 that the lumpy appearance was merely grease buildup, which he did not; and (2) that High Impact independently identified that same material as visually distinct and added a white line to flag it.  The white line is itself affirmative evidence that the visual anomaly was treated by all parties as a genuine unknown, not a known falsehood. The Court's failure to address this evidence in the Ruling constitutes an oversight of "data . . . that might reasonably be expected to alter the conclusion reached by the court."

### C.    The Court Ignored Villani's Testimony That Every P320 He Examined Exhibited Excess Material on the Striker Foot and Sear Faces.

The Court's willfulness finding rests entirely on the premise that the lumpy appearance in the photograph was grease, and that Mr. Bagnell knew it, when it was in fact a combination of raised metal and a thin line of grease.  This premise is directly contradicted by unrebutted testimony at trial, and the numerous sear and striker face photos Bagnell introduced at trial showing substantial raisee metal, that the Court's Ruling never addresses.

Mr. Villani, a *Sig Sauer-certified armorer* with direct hands-on experience inspecting P320 firearms, testified at trial that every single P320 he had personally examined exhibited excess mold material on the striker foot and sear faces, in varying degrees:

> "Every 320 that I've examined, the sear face, the striker foot face, they all have varying degrees of excess mold material around its perimeter." Day 2 Transcript at 322–323.

This testimony is irreconcilable with the Court's conclusion that the lumpy surface appearance in the photograph used to direct High Impact was "just grease" and that Bagnell knew it to be so. If a Sig Sauer-certified armorer observed real excess mold material on every P320 he inspected, then the premise that any particular photograph necessarily showed only grease—and that

Bagnell knew this—is not supported by the record. The Court's failure to engage with this testimony at all is manifest error.

Furthermore, Bagnell's own post-hearing brief affirmatively introduced the Perez photograph (Def. Ex. 9)



as evidence of real excess metal on a striker foot face, and argued at the two year old trial that the lumpy surface conditions depicted in the Animation reflected genuine manufacturing defects - - excess metal not machined off the surface face (a cost saving measure which Sig experts Miller and Toner both admitted) observed across multiple firearms. (Post-Hearing Br. at 19–21.) This is the polar opposite of a party who "knew" the image was a false depiction. A party acting with knowledge of falsity does not introduce the allegedly false image at trial as evidence of a genuine defect. The Court's willfulness finding cannot be reconciled with Bagnell's trial evidence which is itself evidence of good faith.

**D.      The Order failed to account for the predecessor Court's commentary on Sig's litigation conduct.**

Judge Meyer's prior rulings in this matter explicitly flagged the potential for this litigation to constitute an "abuse of process" by Sig Sauer (Doc. 138, Footnote 14). That finding was part of the equitable record of this case, which included a nine-month delay by Sig before suing Bagnell and claiming irreparable harm just before a jury trial.

Under Rule 63, a successor judge inherits not just the cold trial transcript but the entire equitable posture of the proceeding. *See* Fed. R. Civ. P. 63 advisory committee's note ("The successor judge is not free to disregard the prior proceedings."). By issuing a permanent injunction without addressing Judge Meyer's equitable concerns about Sig Sauer's motives, the Court's analysis was incomplete as a matter of law.

**V.      Conclusion**

For the foregoing reasons, this Court should reconsider and vacate its Ruling and Order (Doc. 227). Specifically, the Court should: (1) vacate the findings of "willfulness" and "knowledge of distortion" as procedurally infirm under FRCP 63 and contradicted by the trial record; (2) acknowledge that Sig Sauer's own patent filings and public admissions confirm the mechanical failure theory depicted in the Animation; and (3) conduct a *de novo* hearing at which Bagnell, a lawyer with no disciplinary history at all for 33 years, may testify regarding his state of mind at the time the animation was created and published in 2021.

**Certification of Compliance:** Pursuant to Local Rule 7(c), undersigned counsel certifies that this memorandum complies with the applicable page limitations.

 Dated:        March 23, 2026

Respectfully submitted,

JEFFREY S. BAGNELL, ESQ., LLC, and
JEFFREY S. BAGNELL,


___/s/ John W. Madigan III_____
John W. Madigan, III
30 Old King's Highway South
Suite 215
Darien, Connecticut 06820
jwm3esq@gmail.com


*/s/ Jeffrey S. Bagnell*
Jeffrey S. Bagnell
Federal Bar No. CT18983
55 Post Road West
Suite 200
Westport, Connecticut 06880
(203) 984 8820
jeff@bagnell-law.com


**CERTIFICATE OF SERVICE**

I, Jeffrey S. Bagnell, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Jeffrey S. Bagnell*
Jeffrey S. Bagnell

Dated:  March 23, 2026

9